**FILED**

**JANUARY 23, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**08 C 517**

| | |
|---|---|
| FM. INDUSTRIES, INC., an Illinois Corporation | ) ) ) ) |
| Plaintiff, | ) ) ) |
| Vs. | ) ) ) |
| The Law Offices of Ross Gelfand, LLC., R & B Collections Inc., a Georgia Corporation; Hosto, Buchan, Prater & Lawrence; PLLC, as Successor in Interest to Hosto &Buchan; PLLC; Law Offices Harris & Zide; Regent & Associates, LLP; and James D. Cortez Attorney at Law | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**JUDGE LEFKOW**
**MAGISTRATE JUDGE KEYS**

## VERIFIED C O M P L A I N T

Plaintiff, FM. INDUSTRIES, INC. ("FMI") hereinafter referred to as FMI, through

undersigned counsel, allege as follows based upon personal knowledge as to the allegations

concerning themselves and on information and belief as to all other allegations for its Complaint

against Defendants, The Law Offices of Ross Gelfand, LLC., ("Gelfand"), R&B Collections,

Inc., ("R&B"), Hosto, Buchan, Prater & Lawrence PLLC as Successor in Interest to Hosto &

Buchan, PLLC, ("H&B"), Law Offices of Harris & Zide, ("H&Z"), Regent & Associates, LLP,

("R&A"), and James D. Cortez Attorney at Law ("Cortez").

## THE PARTIES

1. FMI is an Illinois corporation with its principal place of business in Chicago, Illinois. FMI is in the business of developing computer software and networks that develop, collect and transmit data utilized in the debt collection industry.

2. FMI is the copyright owner of the T.U.C.A.N.S. Program.

3. "Gelfand" is a law firm with its principal place of business located in Roswell, Georgia, and is/was an agent of CCSI, and is an attorney that represents and/or represented Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection

4. "R&B" is a Georgia Corporation and is a national collection agency with its principal place of business located in Roswell, Georgia and is engaged in the business of debt collection.

5. "H&B" is a law firm with its principal place of business in Little Rock, Arkansas, and is/was an agent of CCSI, and is an attorney that represents and/or represented Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection.

6. "H&Z" is a law firm with its principal place of business in South Pasadena, California, and is/was an agent of CCSI, and is an attorney that represents and/or represented Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection.

7. "R&A" is a law firm with its principal place of business in Houston, Texas, and is/was an agent of CCSI, and is an attorney that represents and/or represented Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection.

8.  "Cortez" is a law firm with its principal place of business in Livonia, Michigan, and is/was an agent of CCSI, and is an attorney that represents and/or represented Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection.

## JURISDICTION AND VENUE

9.  This is an action by FMI against the defendants for copyright infringement, and software piracy for the unlicensed use of the T.U.C.A.N.S. program.  The claim arises from the Copyright Act of 1976.  17 U.S.C. § 101 *et seq.*  This court, therefore, has jurisdiction pursuant to 28 U.S.C.§ 1338(a).

10. Further, this is an action for breach of contract and thus venue as to the law firm defendants (not R&B) is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391(a) and is further proper based upon the venue provisions contained in the FMI license agreement between FMI and the law firm defendants that represented and/or represent Citigroup who utilized the T.U.C.A.N.S. program the subject of this complaint.

11. Venue as to R&B is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §1332 as R&B is a citizen of Georgia, FMI is a citizen of Illinois and the amount in controversy exceeds $75,000.

## GENERAL ALLEGATIONS

12. FMI, a software developer, by its employees, agents, and servants, developed a software program known by its acronym, T.U.C.A.N.S, which stands for The Ultimate Collection and Network Software.  T.U.C.A.N.S. is a program that is utilized in the debt collection industry.

13. FMI, by its employees, agents, and servants, also developed a computer network that allows the electronic transfer of the data developed and maintained by T.U.C.A.N.S., known as TUCNET and is integrated into the T.U.C.A.N.S. program..

14. The T.U.C.A.N.S. System provided a systematic communication interface between a large-scale debt collector, such as CCSI on behalf of Citigroup and the attorneys (CCSI's agents) retained by CCSI on behalf of Citigroup, the creditor and owner of the credit cards debt in its debt collection efforts.

15. In 2001, CCSI recognized the T.U.C.A.N.S. System could be a valuable tool to assist CCSI and its agents and attorneys on behalf of the creditor Citigroup.  Therefore in May 2001, CCSI entered into a ten-year services agreement with FMI, referred to as the Vender Service Agreement (hereinafter the "VSA").

16. Pursuant to ¶ 1.3 of said agreement, FMI was to provide the TUCANS system to Citigroup's agents and attorneys (A copy of the VSA is attached hereto as Exhibit **A**).

17. Pursuant to ¶ 8.7 of said agreement, CCSI on behalf of itself and its agents and attorneys expressly acknowledged that FMI is the copyright owner of the system, software, and related documentation, and that FMI retained all right, title, and interest in and to the same.

18. FMI also agreed that the system it developed and maintained for CCSI would be capable of "allowing attorneys retained by CCSI on behalf of Citigroup to systemically transfer file information to FMI and FMI in turn will translate and transfer such file information" to the system that CCSI had in use.  (VSA, ¶ 2.1, Exhibit  **B**).

19. The VSA required that the collection attorneys, who were linked to CCSI through FMI via FMI's systems, sign licensing Agreements with FMI. (A sample Licensing Agreement is attached hereto as Exhibit **C**).

20. The licensing agreement was made a part of and incorporated into the VSA pursuant to Section 2.3. (VSA, ¶ 2.3, Exhibit **D**).

21. Said Licensing Agreements recognized FMI's exclusive ownership rights over FMI Software, FMI Systems, all materials provided under the Licensing Agreement and all FMI Information (¶1(K), Exhibit **C**).

22. The Licensing Agreement held that the FMI System-related intellectual property rights are and shall at all times remain the sole and exclusive property of FMI (¶2(c), Exhibit **C**).

23. The Licensing Agreement held that the software was provided to their attorneys and agents at no cost for their exclusive use for CCSI's benefit only as the fees and royalties associated with the use of the system were paid to FMI from Citigroup, Inc., as part of the VSA.

24. The Licensing Agreement also prohibited the attorneys from accessing the system after the termination of the licensing agreement and further required that the attorneys certify within 30 days that they had deleted all of FMI's software. (¶4(c)(6), Exhibit **C**).

25. The Licensing Agreement also held that Customer MAY NOT: use, copy, modify or transfer the FMI Software, the FMI System or any FMI Information, or any copy, modification or merged portion in whole or in part, except as expressly provided for in this Agreement (¶3(b)(1), Exhibit **C**). Further, the licensees MAY NOT transfer possession of any copy, modification or merged portion of the FMI Software, the FMI System or any FMI Information to another party, unless it obtains FMI's prior written consent, which shall not be unreasonably withheld. (¶3(b)(4), Exhibit **C**).

26. Within a few months after the VSA was signed, FMI implemented its systems, linking CCSI with its agents nationwide. During the first two years or so after the execution of the VSA,

CCSI through its attorneys and agents collected over $250,000,000 (two hundred fifty million) of unpaid debt owing to Citigroup using FMI's T.U.C.A.N.S. systems.

27. On July 2, 2003, over two years after the VSA was signed, FMI received written notice of CCSI's desire to cancel the VSA without cause.

28. That according to CCSI, cancellation of the VSA constituted a "self-termination" of FMI's license agreement with CCSI's attorneys.

29. Nevertheless, in a letter ("Letter Agreement") signed by John Gillard an officer of CCSI and dated September 3, 2003, CCSI requested permission from FMI to begin reutilizing T.U.C.A.N.S. and its systems to continue to place accounts to their attorneys and agents, which it did until December 2003 (See Exhibit **E** attached hereto).

30. That the Letter Agreement specifically stated that although the terms of the original VSA were no longer in effect as of September 5, 2003, FMI would be paid the same rate for "any accounts processed on T.U.C.A.N.S. after that date at the same rate set out in the agreement [the VSA]."

31. CCSI stopped placing new accounts at the end of 2003.

32. CCSI and their attorneys and agents continued to utilize the T.U.C.A.N.S. and FMI's systems on all accounts placed prior to January 1, 2004 until CCSI stopped utilizing T.U.C.A.N.S. and FMI's systems altogether on or about May 2005.

33. After CCSI stopped utilizing FMI's systems, FMI sent notice to the attorneys who were linked to CCSI via FMI's system that the FMI licensing agreements were terminated and that the attorneys: (a) could no longer access the software to bring up any information on accounts which would display data, run reports that display data, take pictures and/or screen shots that display data, and/or transfer any data that was entered into the T.U.C.A.N.S.

system to any other systems or medium; (b) not copy modify or transfer the FMI software the FMI system or any FMI information; (c) not transfer possession of any copy, modification or merged portion of the FMI software, the FMI system or any FMI information; (d) not allow any person or entity to have access to or contract with FMI software the FMI system or any FMI information; (e) must delete the software from their hardware, and (f) should send written confirmation that the software had been deleted from their computers. (Termination Notice for Licensing Agreements Exhibit **F** hereto.)

34. That Defendant H&B received the letter of termination of the license agreement as evidenced by the certified mail receipt (Exhibit **G** attached hereto).

35. That Defendant H&B continued to utilize the T.U.C.A.N.S. system in breach of the FMI License Agreement.

36. That Defendant H&Z received the letter of termination of the license agreement as evidenced by the certified mail receipt (Exhibit **H** attached hereto).

37. That Defendant H&Z continued to utilize the T.U.C.A.N.S. system in breach of the FMI License Agreement.

38. That Defendant R&A received the letter of termination of the license agreement as evidenced by the certified mail receipt (Exhibit **I** attached hereto).

39. That Defendant R&A continued to utilize the T.U.C.A.N.S. system in breach of the FMI License Agreement

40. That Defendant Cortez received the letter of termination of the license agreement as evidenced by the certified mail receipt (Exhibit **J** attached hereto).

41. That Defendant Cortez continued to utilize the T.U.C.A.N.S. system in breach of the FMI License Agreement

42. That unbeknownst to FMI and upon information and belief, R&B was provided access to and gained control of the TUCANS software from Gelfand beginning in at least 2003 in direct violation of the licensing agreement entered into between FMI and Gelfand. That no letter of termination was sent to R&B based on its failure to have any valid licensing agreement with FMI. Furthermore, this unauthorized and illegal use by R&B of the TUCANS system was unknown to FMI at the time in which the termination notices were sent out.

43. That upon information and belief Defendant R&B continued to unlawfully utilize the T.U.C.A.N.S. system without any valid licensing agreement or authorization.

44. That at no time including through the date of the filing of this complaint has any of the named Defendants and/or any other attorneys that entered into the license agreement with FMI for the benefit of CCSI and/or Citigroup requested permission from FMI to access the T.U.C.A.N.S. system after the termination of the license agreement between the attorneys and FMI.

45. That at no time through the date of the filing of this complaint has any of the named Defendants and/or attorneys requested a new license agreement with FMI to then legally be able to access the T.U.C.A.N.S. system after the termination of the license agreement between the attorneys and FMI.

### COUNT I
### COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501, *et. seq.*
### (Hosto, Buchan, Prater, & Lawrence, PLLC, Harris & Zide, Regent & Associates, James D. Cortez, and R & B Collections, Inc.

46. FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

47. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received

Case 1:08-cv-00517    Document 1    Filed 01/23/2008    Page 9 of 22

FMI's registration for T.U.C.A.N.S. for the year of 2006 on February 1st, 2006, which is within 5 years of first publishing the program used by CCSI attorneys. The 2006 version of the program contains all revisions, additions, and enhancements of all preceding years. (See Registration attached hereto as Exhibit **K**).

48. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2005 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys, (See Registration attached hereto as Exhibit **L**).

49. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2004 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys, and although Plaintiff has not yet received back from the copyright office the approved registration, FMI has been informed by the copyright office that said registration has in fact been approved. (See Registration attached hereto as Exhibit **M**).

50. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2003 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys, (See Registration attached hereto as Exhibit **N**).

51. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received

52. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S.  The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2001 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys, (See Registration attached hereto as Exhibit **P**).

53. The version of the T.U.C.A.N.S. program used by the attorneys to infringe FMI's copyright was produced and published in 2004 and known as version 5.6.

54. Defendant H&B has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for ten (10) individual transactions on ten (10) individual accounts (see activity report marked Exhibit **Q** attached hereto).

55. That Defendant H&B has infringed on FMI's copyrights in T.U.C.A.N.S. and is in breach of the FMI software licensing agreement, by transferring data from the T.U.C.A.N.S. system to their other collection system commonly known as CLS (see activity report marked Exhibit **Q** attached hereto).

56. That Defendant H&Z has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for ninety five (95) individual transactions on sixty seven (67) individual accounts (see activity report marked Exhibit **R** attached hereto).

57. That Defendant H&Z has infringed on FMI's copyrights in T.U.C.A.N.S. and is in breach of the FMI software licensing agreement, by printing out all of FMI's Information and retaining same for future reference on at least 1841 individual accounts.

58. That Defendant R&A has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for thirty two (32) individual transactions on thirty one (31) individual accounts (see activity report marked Exhibit **S** attached hereto).

59. That Defendant Cortez has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for eighty five (85) individual transactions (see activity report marked Exhibit **T** attached hereto).

60. That Defendant Cortez has infringed on FMI's copyrights in T.U.C.A.N.S. and is in breach of the FMI software licensing agreement, by transferring data from the T.U.C.A.N.S. system to his other collection system commonly known as CLS (see activity report marked Exhibit **U** attached hereto).

61. That based upon information and belief Defendant R&B has infringed FMI's copyrights in T.U.C.A.N.S. by using the T.U.C.A.N.S. system from July 2001 up and through March 2007.

62. That based upon information and belief Defendant R&B has infringed on FMI's copyrights in T.U.C.A.N.S. by printing out all of FMI's Information and retaining same for future reference as well as transferring data from the T.U.C.A.N.S. system to their other collection system.

63. That from July 2001 through March 2007 R&B illegally utilized, possessed, controlled and maintained the TUCANS software and without permission, possessed, controlled, maintained and utilized the TUCANS system for its own personal gain from July 2001 to March 2007.

64. By reason of the acts complained of herein, FMI has been and is being irreparably harmed and is entitled to an injunction restraining Defendants, from using, copying, or displaying the T.U.C.A.N.S. System or the copy written materials/information wrongfully taken from the T.U.C.A.N.S. system pursuant to 17 U.S.C. § 502.

65. FMI is further entitled to recover from Defendants, the damages it has sustained and will sustain as a result of Defendant's willful misconduct, as well as the gains, profits and advantages that Defendants, obtained as a result of its wrongful acts and its costs pursuant to 17 U.S.C.§ 501, *et seq.*

66. That upon information and belief, the president of Gelfand, Mr. Ross Gelfand, was also the CEO of R&B which had its principal place of business at the same address as that of Gelfand.

67. That although separate and distinct entities, these corporations transacted business within the same confines.  That upon information and belief, Gelfand, illegally and without permission, distributed the TUCANS software to R&B for its own beneficial gain.  That this unjustified and wrongful conduct by Gelfand, allowed for R&B to operate, control, transfer, disburse, and distribute the property of FMI, without any valid license or without any permission to operate.

**COUNT II**
**COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. §501, *et. seq.* and §106(3)**
**(The Law Office of Ross Gelfand, LLC. and R & B Collections, Inc.)**

68. FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

69. That on or around July 2001, and upon information and belief, Gelfand was operated and controlled by its president Ross Gelfand. In addition, Ross Gelfand was the president of R&B which was conducting business and operating within the confines of the Gelfand's offices. Although separate and distinct entities, these companies both conduct business at the same registered address with separate employees, books, and records.

70. That the Law Office of Ross Gelfand LLC., entered into a licensing agreement with FMI in July 2001. The Licensing Agreement held that the FMI System-related intellectual property rights are and shall at all times remain the sole and exclusive property of FMI (¶2(c), Exhibit **C**).

71. The Licensing Agreement held that the software was provided to the attorneys at no cost for their exclusive use for CCSI's benefit only as the fees and royalties associated with the use of the system was paid to FMI from Citigroup, Inc., as part of the VSA.

72. The Licensing Agreement also prohibited the attorneys from accessing the system after the termination of the licensing agreement and further required that the attorneys certify within 30 days that they had deleted all of FMI's software. (¶4(c)(6), Exhibit **C**).

73. The Licensing Agreement also held that Customer MAY NOT: use, copy, modify or transfer the FMI Software, the FMI System or any FMI Information, or any copy, modification or merged portion in whole or in part, except as expressly provided for in this Agreement and further MAY NOT transfer possession of any copy, modification or merged portion of the FMI Software, the FMI System or any FMI Information to another party, unless it obtains

FMI's prior written consent, which shall not be unreasonably withheld. (¶¶3(b)(1) and 3(b)(4) Exhibit **C**).

74. That upon information and belief Gelfand distributed its licensed FMI software to R&B and allowed R&B access to the FMI Software. That this distribution was done without the knowledge, permission, or authorization of FMI.

75. That upon information and belief R&B utilized the unlicensed FMI Software for its direct benefit and for the benefit of the Gelfand.

76. That based upon information and belief, Gelfand improperly, willfully, and unlawfully in direct violation of the licensing agreement, distributed the copyrighted materials to R&B for an illegal purpose without obtaining prior authorization on behalf of FMI in violation of 17 USC §106(3).

77. That based upon information and belief Defendants R&B and Gelfand have received money at FMI's expense as a result of their misconduct, and that some or all the profits obtained through this illegal conduct is rightfully due to FMI.

78. The amount of money due from the Defendants R&B and Gelfand to FMI is unknown to FMI and cannot be ascertained without an accounting of the income and gross profits Defendants have obtained through their wrongful and unlawful conduct. FMI is entitled, therefore, to a full accounting.

**COUNT III**
**BREACH OF CONTRACT**
**(Hosto, Buchan, Prater, & Lawrence, PLLC, Harris & Zide, Regent & Associates and James D. Cortez)**

79. FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

80. That on or around the time the VSA was entered into in 2001, H&B, H&Z, R&A and Cortez entered into a Licensing Agreement with FMI for the benefit of CCSI. That pursuant to the licensing agreement each party was to receive certain account information through the T.U.C.A.N.S. network. That this information was placed by CCSI and forwarded to FMI to distribute to all outside counsel.

81. FMI, pursuant to the VSA, did forward certain account information through the T.U.C.A.N.S. system directly to H&B, H&Z, R&A, and Cortez. That H&B, H&Z, R&A and Cortez had access to this information through FMI which was the software provider. That H&B, H&Z, R&A, and Cortez paid no fee for this service as set forth in the licensing agreement as the fee and royalties were paid by Citigroup.

82. The license agreement entered into between H&B, H&Z, R&A, and Cortez, and FMI for the benefit of Citigroup specifically states that they have read the terms and conditions and agree to be bound by all those terms and conditions.

83. That on or around June 10, 2005, H&B, H&Z, R&A, and Cortez received written communication terminating the licensing agreement with FMI. Furthermore, this communication to H&B, H&Z, R&A, and Cortez made known that all information remained the property of FMI and that no duplication, publication, copying or transfer of information could take place.

84. That H&B, H&Z, R&A, and Cortez were also aware that the software should be deleted upon the termination of their licensing agreements with FMI.

85. That H&B, H&Z, R&A, and Cortez continued to use the TUCANS system after the termination of the licensing agreement. That this unauthorized use of the system upon termination is a direct breach of the licensing agreement previously entered into.

86. That at no time was permission granted to use or obtain certain information that was the property of FMI upon termination.

87. That H&B, H&Z, R&A, and Cortez still continue to access the system and obtain information for their own benefit.

88. That H&B, H&Z, R&A, and Cortez have removed, copied, transferred, and obtained information from the T.U.C.A.N.S. system in direct violation and breach of the Licensing Agreement.

89. That based upon the aforementioned provisions of the Licensing Agreement, H&B, H&Z, R&A, and Cortez breached the Licensing Agreement by accessing the T.U.C.A.N.S. system after the termination date.

90. Plaintiff has been damaged in the sum believed to exceed $100,000.00 by reason of the breach of the licensing agreement.

WHEREFORE, Plaintiff prays for judgment in a sum to be determined through discovery, plus costs.

## COUNT IV
## CONVERSION
### (R & B Collections, Inc.)

91. FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

92. That based upon information and belief instead of paying FMI for the use of its TUCANS system, R&B intentionally and willfully used the TUCANS system without permission and took possession of FMI's property, including, but not limited to, FMI's confidential, proprietary, and copyrighted Software and Support Materials, all of which FMI stored on its TUCANS system.

93. This property is the sole and exclusive property of FMI. FMI has an exclusive right to possession and distribution of such property, which is valuable to FMI and vital to its continued business operations.

94. FMI at no time consented, expressly or impliedly, to R&B copying, downloading, removal, retention, transferring, or distribution of such property.

95. That based upon information and belief R&B has been in knowing and unauthorized possession and control of such property since at least July 2001, to at least March 2007. During that time, R&B was obtaining unjust and substantial benefit from the distribution of FMI's property to themselves or third parties without FMI's consent and without paying FMI for the value of such property.

96. That based upon information and belief R&B's improper assumption and exercise of dominion and control over FMI's property and their likely distribution of the same has and will continue to interfere with and diminish FMI's rights in that property.

97. Allowing R & B to retain the benefits received as a result of its wrongful acts would unjustly benefit R&B at FMI's expense.

98. As a direct and proximate result of R&B's actions, FMI has lost, and will continue to lose, profits from potential purchasers of the TUCANS system and licensees of TUCANS software products, in an amount to be determined at trial. R&B's wrongful conduct was a substantial factor in causing this harm.

99. FMI is entitled to an award of the value of the property taken, with interest, and other damages to be proven at the time of trial. In addition, or in the alternative, FMI is entitled to damages and repossession of the converted property. In addition, or in the alternative, FMI is

entitled to restitution of the Defendants R&B and Gelfand's ill-gotten gains. FMI will seek its election of remedies at trial.

### COUNT IV
### UNJUST ENRICHMENT/RESTITUTION
### (R & B Collections, Inc.)

100. FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

101. That based upon information and belief R&B unjustly received benefits at the expense of FMI through its wrongful conduct, including R&B's interference with FMI's business relationships and other unfair business practices, as well as its unauthorized use thereof, and conversion of the Software and Support Materials, which took substantial time and money for FMI to develop.

102. That based upon information and belief R&B continues to unjustly retain these benefits at the expense of FMI. It would be unjust for R&B to retain any value they obtained as a result of their wrongful conduct.

103. FMI is accordingly entitled to full restitution of all amounts in which R&B has been unjustly enriched at FMI's expense.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, FMI, prays that this Court:

1. Preliminarily and permanently enjoin Defendants, their subsidiaries and affiliates and their officers, directors, agents and representatives, attorneys and all persons acting or claiming to act on their behalf or under their direction and authority from (i) copying, selling, distributing, displaying or otherwise using for any purpose the T.U.C.A.N.S. system and/or the wrongfully obtained copy written materials/information without FMI's express consent or

in any other way further infringing on FMI's copyrights in T.U.C.A.N.S., (ii) engaging in any action that allows a third party to copy, sell, distribute, display or otherwise use for any purpose the T.U.C.A.N.S. system without FMI's express consent.

2. Order the impounding of all unauthorized copies of the T.U.C.A.N.S. system from each defendant;

3. Order that any and all copy written materials/information be deleted from any system that said materials/information has/had been transferred to.

4. Award FMI its actual damages;

5. Order an accounting for the amounts recovered on behalf of Citigroup and CCSI from the unauthorized use of the T.U.C.A.N.S. systems, which is the Defendants's profit as a direct and proximate result of Defendants's copyright infringement and order such profits to be paid to FMI pursuant to 17 U.S.C. § 504(b);

6. Alternatively, FMI is entitled to the aforementioned amount and its actual damages in an amount equal to its normal retail price of $3,750 to $5,000 per individual licensed user;

7. Alternatively, FMI is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less then $150,000.00 for all individual infringements involved in this action;

8. Declare Defendants Hosto, Buchan, Prater & Lawrence, PLLC, Harris & Zide, Regent & Associates and James D. Cortez Attorney at Law are in breach of the FMI Software Licensing Agreement and have infringed on FMI's copyrights;

9. Award FMI from Hosto, Buchan, Prater & Lawrence, PLLC, the maximum statutory damages, pursuant to 17 U.S.C. § 504(b), in the amount in excess of $75,000.00;

10. Alternatively award FMI from Hosto, Buchan, Prater & Lawrence, PLLC, the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less then $150,000.00 for all individual infringements involved in this action after July 10, 2005, which is at least ten (10) or $1,500,000.00;

11.  Award FMI from Hosto, Buchan, Prater & Lawrence, PLLC, the actual damages based upon number of unlicensed users, pursuant to 17 U.S.C. § 504(b), in the amount of not less than $386,250.00 representing 103 unlicensed users at $3,750.00 per user or $515,000.00 representing 103 unlicensed users at $5,000.00 per unlicensed user;

12. Award FMI from Harris & Zide the maximum statutory damages, pursuant to 17 U.S.C. § 504(b), in the amount in excess of $75,000.00;

13. Alternatively award FMI from Harris & Zide the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less than $150,000.00 for all individual infringements involved in this action after July 10, 2005, which is at least ninety five (95) or $14,250,000.00 or per individual account which were at least sixty seven (67) or $10,050,000.00;

14.  Award FMI from Harris & Zide the actual damages based upon number of unlicensed users, pursuant to 17 U.S.C. § 504(b), in the amount of not less than $847,500.00 representing 226 unlicensed users at $3,750.00 per user or $1,130,000.00 representing 226 unlicensed users at $5,000.00 per unlicensed user;

15. Award FMI from Regent & Associates the maximum statutory damages, pursuant to 17 U.S.C. § 504(b), in the amount in excess of $75,000.00;

16. Alternatively award FMI from Regent & Associates the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less than $150,000.00 for all individual

infringements involved in this action after July 10, 2005, which is at least thirty two (32) or $4,800,000.00 or per individual account which were at least thirty one (31) or $4,650,000.00;

17. Award FMI from Regent & Associates the actual damages based upon number of unlicensed users, pursuant to 17 U.S.C. § 504(b), in the amount of not less than $562,500.00 representing 150 unlicensed users at $3,750.00 per user or $750,000.00 representing 150 unlicensed users at $5,000.00 per unlicensed user;

18. Award FMI from James D. Cortez Attorney at Law the maximum statutory damages, pursuant to 17 U.S.C. § 504(b), in the amount in excess of $75,000.00;

19. Alternatively award FMI from James D. Cortez Attorney at Law the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less than $150,000.00 for all individual infringements involved in this action after July 10, 2005, which is at least ninety one (91) or $13,6500,000.00 or per individual account which were at least eighty five (85) or $12,750,000.00;

20. Award FMI from James D. Cortez Attorney at Law the actual damages based upon number of unlicensed users, pursuant to 17 U.S.C. § 504(b), in the amount of not less than $48,750.00 representing 13 unlicensed users at $3,750.00 per user or $65,000.00 representing 13 unlicensed users at $5,000.00 per unlicensed user;

21. Award FMI from Gelfand an amount to be determined at trial for unlawfully distributing TUCANS to R & B Collections, Inc., FMI's copywritten software;

22. Award FMI from R & B Collections, Inc., an amount in excess of $75,000.00 and/or to be determined by accounting and/or at trial the amount collected by R & B on behalf of Citibank and Citigroup entities;

23. Award FMI punitive damages for the willful and wanton nature of Defendants's acts;

21

24. Award FMI interest, costs and its attorneys' fees pursuant to 17 U.S.C. § 505; and

25. Award such other further relief as this Court deems just and proper.

Dated: January 23, 2008                          Respectfully submitted,
                                                 **FM INDUSTRIES INC**


                                        By:  _____s/Wayne Rhine_____
                                                     Wayne Rhine



**WAYNE RHINE**
**Attorney for Plaintiff**
**ARDC #2323990**
**500 W Madison St. #2910**
**Chicago, IL. 60661**
**Phone:  (312)474-4532**