080141.4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FM INDUSTRIES, an Illinois corporation,

Plaintiff,

v.

LAW OFFICE OF ROSS GELFAND, LLC, ET AL.,

Defendants.

No. 08 C 517

Judge Joan Humphrey Lefkow

Magistrate Judge Arlander Keys

**DEFENDANTS LAW OFFICE OF ROSS GELFAND, LLC AND R & B COLLECTIONS, INC.'S MOTION TO STAY THE PROCEEDINGS**

Defendants Law Offices of Ross Gelfand, LLC and R & B Collections, by their attorneys John J. Duffy, Karen Kies DeGrand, Charles S. Ofstein, Edward E. Fu and DONOHUE BROWN MATHEWSON & SMYTH LLC, move this Court to stay the proceedings until the resolution of case number 07 C 1794 pending before Judge Suzanne B. Conlon and state the following:

**INTRODUCTION**

FMI filed this action against Gelfand, R & B Collections and others on January 23, 2008. (*See* D.E. 1). The complaint essentially alleges that Gelfand, R & B Collections and others have infringed FMI's copyright by continuing to "utilize" a debt collection software program provided by plaintiff after a licensing agreement expired. Count I of the complaint alleges copyright infringement under 17 U.S.C. § 501 against defendants R & B Collections, James D. Cortez and others. Count II alleges copyright infringement under 17 U.S.C. § 501 and § 106(3) against Gelfand and R& B Collections. Count III alleges breach of contract against James D. Cortez and

others. Count IV alleges conversion of the TUCANS system against R & B Collections. Finally, Count V alleges unjust enrichment against R & B Collections.

FMI has previously filed a lawsuit against Gelfand, Cortez and others based on nearly identical allegations of copyright infringement and breach of contract. (*See* FMI complaint in 07 C 1794, attached as Exhibit A). That case is currently pending before Judge Suzanne B. Conlon and the parties await decisions on defendants' motions for summary judgment or a trial in likely April or May 2008. A stay of this case until plaintiff's case before Judge Conlon is resolved would save the Court and parties significant time and money.

**ARGUMENT**

**I. THIS CASE DUPLICATES ANOTHER CASE PENDING BEFORE JUDGE CONLON REQUIRING A STAY HERE TO AVOID UNCESSESSARY EFFORT BY THE COURT AND PARTIES.**

It is well settled that if the same issues are presented in an action pending in another federal court, the court may stay the action before it. *Zurich Ins. Co. v. Celotex Corp.*, 1988 U.S. Dist. LEXIS 11450 at *8. "The avoidance of duplicative litigation is one of the paramount interests of justice." *Id.* at *11 (citing *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). The danger that duplicative litigation will result in inconsistent judgments is sufficient to justify a federal court's stay of an action. *Id.* at *17.

A district court has broad discretion to stay litigation for reasons of wise judicial administration whenever it is duplicative of a parallel action already pending in another federal court. *In re H & R Block Mortgage Corp.*, 2007 U.S. Dist. LEXIS 68032 at * 3 (quoting *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993)). A suit is generally duplicative of another if the claims, parties and available relief do not significantly differ between the two actions. *Id.* A

court may stay the action in deference to an earlier suit even if the parties and issues are not identical. *Heuft Systemtechnik, GmbH v. Videojet Systems Int'l*, 1993 U.S. Dist. LEXIS 6014 at * 9.

In *Videojet*, the defendant filed a motion to stay or dismiss the plaintiff's complaint because a prior parallel action was pending in Germany. The underlying facts involved a breach of contract between a manufacturer and a distributor of printers. The district court granted the motion to stay the newly filed action. The court found that although the case in Germany was not precisely the same, there was sufficient overlap as to the operative facts to warrant a stay. Specifically, the court reasoned that although the newly filed complaint contained different allegations, Count I in both complaints addressed the fundamental issue of ownership of the goods in question.

Significantly, in response to the plaintiff's argument that the new complaint was not identical, the court cited the long-standing rule that an action may be stayed in deference to an earlier action even if the parties and issues are not identical. *Id.* at *9 (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *see also Serlin*, 3 F.3d at 223. "As opposed to absolute identity, courts require that the parties and issues be sufficiently similar that *res judicata* can be asserted." *Id.* The court reasoned that after the prior litigation reached final judgment, Count I would be *res judicata*, leaving only Count II of the new complaint to be resolved. And although the prior litigation would not decide Count II, the court observed that many of the issues in Count II could be determined by the prior litigation. The court ruled that staying the action would prevent "needlessly duplicative discovery and proceedings, thus conserving judicial resources and sparing the parties the expense of pursuing and defending two like actions." *Id*. at *10.

In this case, it is apparent that there is substantial overlap as to the operative facts and allegations in both federal actions. The 08 C 517 case contains allegations that are nearly identical to the allegations in the 07 C 1794 case. FMI attaches the same or substantially identical exhibits as well. Moreover, all of FMI claims in the 08 C 517 case arise out of Gelfand and other law firms' use of the TUCANS software after their client, Citicorp Credit Services, Inc. ("CCSI"), decided to stop doing business with FMI. (See generally, Verified Complaint, Ex. A.) To illustrate the similarities, the following chart outlines the identity of the key factual allegations of infringement:

| **General Allegations in Verified Complaint in Case No. 08 C 517** | **General Allegations in Second Amended Complaint, Case No. 07 C 1794** |
|---|---|
| | |
| 12. FMI, a software developer, by its employees, agents, and servants, developed a software program known by its acronym, T.U.C.A.N.S, which stands for The Ultimate Collection and Network Software. T.U.C.A.N.S. is a program that is utilized in the debt collection industry. | 14. FMI, a software developer, by its employees, agents, and servants, developed a software program known by its acronym, T.U.C.A.N.S, which stands for The Ultimate Collection and Network Software. T.U.C.A.N.S. is a program that is utilized in the debt collection industry. |
| 13. FMI, by its employees, agents, and servants, also developed a computer network that allows the electronic transfer of the data developed and maintained by T.U.C.A.N.S., known as TUCNET. | 15. FMI, by its employees, agents, and servants, also developed a computer network that allows the electronic transfer of the data developed and maintained by T.U.C.A.N.S., known as TUCNET. |
| 14. The T.U.C.A.N.S. System provided a systematic communication interface between a large-scale debt collector, such as CCSI on behalf of Citigroup and the attorneys (CCSI's agents) retained by CCSI on behalf of Citigroup, the creditor in its debt collection efforts. | 16. The T.U.C.A.N.S. System provided a systematic communication interface between a large-scale debt collector, such as CCSI on behalf of Citigroup and the attorneys (CCSI's agents) retained by CCSI on behalf of Citigroup, the creditor in its debt collection efforts. |

| | |
|---|---|
| creditor in its debt collection efforts. | |
| 15. In 2001, CCSI recognized the T.U.C.A.N.S. System could be a valuable tool to assist CCSI in its debt collection efforts on behalf of the creditor Citigroup. Therefore in May 2001, CCSI entered into a ten-year services agreement with FMI. referred to as the Vender Service Agreement (hereinafter the "VSA"). | 17. In 2001, CCSI recognized the T.U.C.A.N.S. System could be a valuable tool to assist CCSI in its debt collection efforts on behalf of the creditor Citigroup. Therefore in May 2001, CCSI entered into a ten-year services agreement with FMI. referred to as the Vender Service Agreement (hereinafter the "VSA"). |
| 18. FMI also agreed that the system it developed and maintained for CCSI would be capable of "allowing attorneys retained by CCSI on behalf of Citigroup to systemically transfer file information to FMI and FMI in turn will translate and transfer such file information" to the system that CCSI had in use. (VSA, ¶ 2.1, Exhibit B). | 21. FMI also agreed that the system it developed and maintained for CCSI would be capable of "allowing attorneys retained by CCSI on behalf of Citigroup to systemically transfer file information to FMI and FMI in turn will translate and transfer such file information" to the system that CCSI had in use. (VSA, ¶ 2.1, Exhibit C). |
| 19. The VSA required that the collection attorneys, who were linked to CCSI through FMI via FMI's systems, sign licensing Agreements with FMI. (A sample Licensing Agreement is attached hereto as Exhibit C). | 22. The VSA required that the collection attorneys, who were linked to CCSI through FMI via FMI's systems, sign licensing Agreements with FMI. (A sample Licensing Agreement is attached hereto as Exhibit D). |
| 33. After CCSI stopped utilizing FMI's systems, FMI sent notice to the attorneys who were linked to CCSI via FMI's system that the FMI licensing agreements were terminated and that the attorneys: (a) could no longer access the software to bring up any information on accounts which would display data, | 33. After CCSI stopped utilizing FMI's systems, FMI sent notice to the attorneys who were linked to CCSI via FMI's system that the FMI licensing agreements were terminated and that the attorneys: (a) could no longer access the software to bring up any information on accounts which would display data, run reports that display data, take pictures and/or screen shots that display |

| | |
|---|---|
| run reports that display data, take pictures and/or screen shots that display data, and/or transfer any data that was entered into the T.U.C.A.N.S. system to any other systems or medium; (b) not copy modify or transfer the FMI software the FMI system or any FMI information; (c) not transfer possession of any copy, modification or merged portion of the FMI software, the FMI system or any FMI information; (d) not allow any person or entity to have access to or contract with FMI software the FMI system or any FMI information; (e) must delete the software from their hardware, and (f) should send written confirmation that the software had been deleted from their computers. (Termination Notice for Licensing Agreements Exhibit F hereto.) | data, and/or transfer any data that was entered into the T.U.C.A.N.S. system to any other systems or medium; (b) not copy modify or transfer the FMI software the FMI system or any FMI information; (c) not transfer possession of any copy, modification or merged portion of the FMI software, the FMI system or any FMI information; (d) not allow any person or entity to have access to or contract with FMI software the FMI system or any FMI information; (e) must delete the software from their hardware, and (f) should send written confirmation that the software had been deleted from their computers. (Termination Notice for Licensing Agreements Exhibit G hereto.) |
| 44. That at no time including through the date of the filing of this amended complaint has any of the named Defendants and/or any other attorneys that entered into the license agreement with FMI for the benefit of CCSI and/or Citigroup requested permission from FMI to access the T.U.C.A.N.S. system after the termination of the license agreement between the attorneys and FMI. | 39. That at no time including through the date of the filing of this amended complaint has any of the named Defendants and/or any other attorneys that entered into the license agreement with FMI for the benefit of CCSI and/or Citigroup requested permission from FMI to access the T.U.C.A.N.S. system after the termination of the license agreement between the attorneys and FMI. |
| 45. That at no time through the date of the filing of this amended complaint has any of the named Defendants and/or attorneys requested a new license agreement with FMI to then legally be able to access the T.U.C.A.N.S. system after | 40. That at no time through the date of the filing of this amended complaint has any of the named Defendants and/or attorneys requested a new license agreement with FMI to then legally be able to access the T.U.C.A.N.S. system after the termination of the license agreement between the attorneys |

| | |
|---|---|
| the termination of the license agreement between the attorneys and FMI. | and FMI. |

| **Allegations in Count I of Verified Complaint in Case No. 08 C 517** | **Allegations in Count I of Second Amended Complaint, Case No. 07 C 1794** |
|---|---|
| 59. That Defendant Cortez has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for eighty five (85) individual transactions (see activity report marked Exhibit T attached hereto). | 54. That Defendant Cortez has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for eighty five (85) individual transactions (see activity report marked Exhibit S attached hereto). |
| 60. That Defendant Cortez has infringed on FMI's copyrights in T.U.C.A.N.S. and is in breach of the FMI software licensing agreement, by transferring data from the T.U.C.A.N.S. system to his other collection system commonly known as CLS (see activity report marked Exhibit T attached hereto). | 55. That Defendant Cortez has infringed on FMI's copyrights in T.U.C.A.N.S. and is in breach of the FMI software licensing agreement, by transferring data from the T.U.C.A.N.S. system to his other collection system commonly known as CLS (see activity report marked Exhibit T attached hereto). |

Thus, FMI’s complaint pending before this Court necessarily requires the duplication of discovery and proceedings that have already occurred in the 07 C 1794 case.

## II. RES JUDICATA WOULD BAR THIS CASE IF JUDGE CONLON GRANTS GELFAND’S PENDING SUMMARY JUDGMENT MOTION OR GELFAND WINS HIS TRIAL AGAINST FM INDISTRIES.

It is equally clear that the final judgment of the 07 C 1794 case would be *res judicata* as to the claims in the pending action. In the 07 C 1794 case, Gelfand has filed a motion for summary judgment against FMI on the issues of copyright infringement, damages, ownership of the copyright and breach of contract. The motion is fully briefed and awaiting ruling by Judge Conlon. Thus, Gelfand’s motion for summary judgment may be a final judgment on the same issues between the

same parties. *See Videojet*, 1993 U.S. Dist. LEXIS 6014 at * 10. This alone warrants a stay of the pending action.

Even if the summary judgment motion is denied, the 07 C 1794 case is ready for trial and would likely be tried to verdict in April or May 2008. Staying this case 60 to 90 days until any verdict in the 07 C 1794 case would save this Court and the parties time and money. Moreover, any verdict against FMI would also have *res judicata* effect in this case and bar further litigation or narrow it significantly.

## III. FMI MAY BE FORUM SHOPPING TO AVOID JUDGE CONLON'S RULINGS.

Finally, filing a new action against Gelfand while a nearly identical action is pending before another federal judge in the same district indicates that FMI may be forum shopping. FMI filed this complaint 13 days after its motion to extend discovery was denied by Judge Conlon on January 10, 2008 in the 07 C 1794 case. Discovery had closed, after three extensions were previously granted, and FMI was barred from taking discovery on several witnesses. (See Transcript of Proceedings before Judge Conlon, Ex. B.) During the January 10 hearing, Judge Conlon concluded that FMI had not shown "good cause" to extend discovery. (*Id.* at 13.) The Court also raised concerns that FMI's lawyers were possibly "trying to relitigate or mischaracterize what occurred before the magistrate, [and] I find that very disturbing." (*Id.* at 11.) Judge Conlon also addressed one of plaintiff's three lawyers and observed, "I think you are deliberately misunderstanding me." (*Id.* at 12.)

Allowing the action to proceed here would permit FMI to engage in forum shopping that would circumvent Judge Conlon's discovery orders. *See Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1177 (W.D. Wisc. 2007) ("Plaintiff should not be permitted to start litigating infringement of its patents in one district and then after deciding that

things were progressing too slowly or adversely be able to litigate infringement of the exact same patents in a new district by adding similar defendants."); *see also Serlin*, 3 F.3d at 224 ("The irrationality of tolerating duplicative litigation in the federal system is all the more pronounced where, as here, two federal judges sitting on the same district court are…devoting scarce judicial resources to the adjudication of the same charges by essentially the same plaintiffs against the same defendants." (citations omitted)). This Court should stay this action pending the resolution of the 07 C 1794 case.

## CONCLUSION

Defendants Law Offices of Ross Gelfand, LLC and R & B Collections, Inc. respectfully request entry of an order staying the proceedings until the resolution of case number 07 C 1794 pending before Judge Suzanne B. Conlon and for any other relief this Court deems necessary and proper.

Respectfully submitted,

LAW OFFICE OF ROSS GELFAND, LLC and
R & B COLLECTIONS, INC.

s/ John J. Duffy

John J. Duffy (john.duffy@dbmslaw.com)
DONOHUE BROWN MATHEWSON & SMYTH LLC
140 South Dearborn Street, Suite 800
Chicago, IL 60603
Telephone: (312) 422-0900
Facsimile: (312) 422-0909