**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FM. INDUSTRIES, INC., an Illinois Corporation | ) ) ) ) |
| **Plaintiff,** | ) Case No. 07 CV 1794 ) ) Judge Conlon |
| CITICORP CREDIT SERVICES, INC., a Delaware Corporation; Citigroup, Inc., Citibank Federal Savings Bank, Citibank (South Dakota), N.A., Citibank USA, N.A., Jeanette Brown; and John Gillard; and Law Office of Ross Gelfand, LLC,; and James D. Cortez, Attorney at Law | ) ) Magistrate Judge Denlow ) ) ) ) ) ) ) ) ) |
| **Defendants.** | ) |

## VERIFIED SECOND AMENDED C O M P L A I N T

Plaintiff, FM. INDUSTRIES, INC. ("FMI") hereinafter referred to as FMI, through undersigned counsel, allege as follows based upon personal knowledge as to the allegations concerning themselves and on information and belief as to all other allegations for its Complaint against Defendants, Citicorp Credit Services Inc ("CCSI"), Citigroup, Inc., Citibank Federal Savings Bank, Citibank (South Dakota), N.A., Citibank USA, N.A., hereinafter referred to collectively as Citigroup, John Gillard, Jeanette Brown, Law Offices of Ross Gelfand, LLC and James D. Cortez Attorney at Law.

1

## THE PARTIES

1. FMI is an Illinois corporation with its principal place of business in Chicago, Illinois. FMI is in the business of developing computer software and networks that develop, collect and transmit data utilized in the debt collection industry.

2. FMI is the copyright owner of the T.U.C.A.N.S. Program.

3. Defendant CCSI is a Delaware corporation, with its principal place of business in Kansas City, Missouri. CCSI is engaged in the business of, *inter alia*, debt collection on behalf of Citibank (South Dakota), N.A., and/or Citigroup, Inc..

4. CCSI is a wholly owned affiliate of Citigroup, Inc.

5. Citibank (South Dakota), N.A., is a national bank that issues credit cards to consumers.

6. Citibank (South Dakota), N.A. has its principal place of business at 701 East 60th Street North, Sioux Falls, South Dakota. It is an affiliate of Citigroup Inc., a diversified financial holding company which has Executive Offices located at 399 Park Avenue, New York, NY 10043.

7. That in October of 2006, Citibank, N.A., transferred its investment in Citibank (South Dakota), N.A. (the Company's primary banking entity responsible for U.S. credit card activities the subject of this complaint) to Citigroup.

8. John Gillard is currently Executive Vice President and Director of Recovery for CCSI.

9. Jeanette Brown is currently Vice President of Litigation for CCSI.

10. Law Offices of Ross Gelfand, LLC, (hereinafter "Gelfand") is a law firm with its principal place of business in Georgia and is an agent of CCSI and is a firm that represents Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of CCSI.

11. James D. Cortez, Attorney at Law (hereinafter "Cortez") is an attorney with its principal place of business in Michigan and is an agent of CCSI and is an attorney that represents Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of CCSI

## JURISDICTION AND VENUE

12. This is an action by FMI against CCSI and Citigroup for inducement of copyright infringement, and against Gelfand and Cortez for copyright infringement and software piracy for the unlicensed use of the T.U.C.A.N.S. program. The claim arises from the Copyright Act of 1976. 17 U.S.C. § 101 *et seq.* This court, therefore, has jurisdiction pursuant to 28 UL.S.C.§ 1338(a).

13. Venue is proper in the Northern District of Illinois, Easter Division pursuant to 28 U.S.C. § 1391(a) and is further proper based upon the venue provisions contained in the FMI license agreement between FMI and the attorneys representing Citigroup who utilized the T.U.C.A.N.S. program the subject of this complaint.

## GENERAL ALLEGATIONS

14. FMI, a software developer, by its employees, agents, and servants, developed a software program known by its acronym, T.U.C.A.N.S, which stands for The Ultimate Collection and Network Software. T.U.C.A.N.S. is a program that is utilized in the debt collection industry.

15. FMI, by its employees, agents, and servants, also developed a computer network that allows the electronic transfer of the data developed and maintained by T.U.C.A.N.S., known as TUCNET.

16. The T.U.C.A.N.S. System provided a systematic communication interface between a large-scale debt collector, such as CCSI on behalf of Citigroup and the attorneys (CCSI's agents) retained by CCSI on behalf of Citigroup, the creditor in its debt collection efforts.

17. In 2001, CCSI recognized the T.U.C.A.N.S. System could be a valuable tool to assist CCSI in its debt collection efforts on behalf of the creditor Citigroup. Therefore in May 2001, CCSI entered into a ten-year services agreement with FMI. referred to as the Vender Service Agreement (hereinafter the "VSA").

18. Under the terms of the VSA, FMI agreed to continue to develop a software program designed to fit the specific needs of CCSI, as set forth in the terms of the VSA. (A copy of the VSA is attached hereto as Exhibit **A**).

19. Pursuant to §8.7 of said agreement, CCSI expressly acknowledged that FMI is the copyright owner of the system, software, and related documentation, and that FMI retained all right, title, and interest in and to the same.

20. FMI was to "develop and maintain systems capable of allowing CCSI to systematically transfer file information from its site in Kansas City to its attorneys, [CCSI's agents] it has retained in all fifty (50) states." FMI completed this process. (VSA, ¶2 Exhibit **B)**

21. FMI also agreed that the system it developed and maintained for CCSI would be capable of "allowing attorneys retained by CCSI on behalf of Citigroup to systemically transfer file information to FMI and FMI in turn will translate and transfer such file information" to the system that CCSI had in use. (VSA, ¶ 2.1, Exhibit **C**).

22. The VSA required that the collection attorneys, who were linked to CCSI through FMI via FMI's systems, sign licensing Agreements with FMI. (A sample Licensing Agreement is attached hereto as Exhibit **D**).

23. The licensing agreement was made a part of and incorporated into the VSA pursuant to Section 2.3. (VSA, ¶ 2.3, Exhibit **E**).

24. Said Licensing Agreements recognized FMI's excusive ownership rights over FMI Software, FMI Systems, all materials provided under the Licensing Agreement and all FMI information, as defined in ¶1(K) of the VSA.

25. The Licensing Agreement also prohibited the attorneys from accessing the system after the termination of the licensing agreement and further required that the attorneys certify within 30 days that they had deleted all of FMI's software. (Licensing Agreement ¶4(c)(6), Exhibit **D** hereto).

26. Within a few months after the VSA was signed, FMI implemented its systems, linking CCSI with its agents nationwide. During the first two years or so after the execution of the VSA, CCSI collected over $250,000,000 (two hundred fifty million) of unpaid debt using FMI's T.U.C.A.N.S. systems.

27. On July 2, 2003, over two years after the CCSI contract was signed, FMI received written notice of CCSI's desire to cancel the VSA based on CCSI's decision to utilize a similar software system, which was designed in part by London Bridge, Inc., a company that had lured away one of the defendants, John Gillard, who at that time was one of FMI's executive vice-presidents.

28. That according to CCSI, cancellation of the VSA constituted a "self-termination" of FMI's license agreement with CCSI's attorneys.

29. Nevertheless, in a letter ("Letter Agreement") signed by John Gillard and dated September 3, 2003, CCSI requested permission from FMI to begin reutilizing T.U.C.A.N.S. and its systems to place accounts to their agents, which it did until December 2003 (See Exhibit **F** attached hereto).

5

30. That the Letter Agreement specifically stated that although the terms of the original VSA were no longer in effect as of September 5, 2003, FMI would be paid the same rate for "any accounts processed on T.U.C.A.N.S. after that date at the same rate set out in the agreement [the VSA]."

31. CCSI stopped utilizing T.U.C.A.N.S. and FMI's systems altogether on or about May 2005.

32. That CCSI prior to, and subsequent to July 10, 2005, replaced accounts originally placed through FMI, to the same attorneys who originally received the account thru FMI and/or other attorneys hired by CCSI on behalf of Citigroup, so as to not pay FMI its fee pursuant to the terms of the VSA and the Letter Agreement.

33. After CCSI stopped utilizing FMI's systems, FMI sent notice to the attorneys who were linked to CCSI via FMI's system that the FMI licensing agreements were terminated and that the attorneys: (a) could no longer access the software to bring up any information on accounts which would display data, run reports that display data, take pictures and/or screen shots that display data, and/or transfer any data that was entered into the T.U.C.A.N.S. system to any other systems or medium; (b) not copy modify or transfer the FMI software the FMI system or any FMI information; (c) not transfer possession of any copy, modification or merged portion of the FMI software, the FMI system or any FMI information; (d) not allow any person or entity to have access to or contract with FMI software the FMI system or any FMI information; (e) must delete the software from their hardware, and (f) should send written confirmation that the software had been deleted from their computers. (Termination Notice for Licensing Agreements Exhibit **G** hereto.)

34. After CCSI cancelled the VSA and the Letter Agreement with FMI, and after the attorneys received notice of cancellation of the related Licensing Agreement, CCSI encouraged,

6

instructed, and induced its collection attorneys to continue to access the T.U.C.A.N.S. system in furtherance of its collection activities and contrary to the copyright protections afforded to FMI by contacting each attorney and instructing them to take the information off of the T.U.C.A.N.S. system, or to otherwise violate their Licensing Agreements with FMI.

35. After CCSI canceled the VSA and the Letter Agreement with FMI and after the attorneys received notice of cancellation of the related Licensing Agreement, CCSI took no affirmative steps to ensure that the attorneys would not violate the License Agreement between the attorneys and FMI and the Copyright Act of 1976.  17 U.S.C. § 101 *et seq*

36. That Defendant Gelfand received the letter of termination of the license agreement as evidenced by the certified mail receipt (Exhibit **H** attached hereto), and had sent notice to FMI that he had the FMI software removed from their hardware and that the Software License Agreement will terminate effective July 10, 2005 (Exhibit **I** attached hereto).

37. That Defendant Gelfand continued to utilize the T.U.C.A.N.S. system in breach of the FMI License Agreement.

38. That Defendant Cortez received the letter of termination of the license agreement as evidenced by the certified mail receipt (Exhibit **J** attached hereto).

39. That at no time including through the date of the filing of this amended complaint has any of the named Defendants and/or any other attorneys that entered into the license agreement with FMI for the benefit of CCSI and/or Citigroup requested permission from FMI to access the T.U.C.A.N.S. system after the termination of the license agreement between the attorneys and FMI.

40. That at no time through the date of the filing of this amended complaint has any of the named Defendants and/or attorneys requested a new license agreement with FMI to then legally be

able to access the T.U.C.A.N.S. system after the termination of the license agreement between the attorneys and FMI.

41. Defendants CCSI and/or Citigroup is capable of controlling the activities of their attorneys and is aware of the illegal nature of their attorneys activities.  Moreover, CCSI and/or Citigroup actively participated in, facilitated in, materially contributed to, and encouraged these activities, while profiting from these activities as the infringed information allowed for the continued collection of those accounts placed with them.

### COUNT I
### (COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501, ET SEQ.)

42. FMI repeats and realleges each and every allegation contained in paragraphs 1 through 41 as if fully set forth herein.

43. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S.  The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2006 on February 1st, 2006, which is within 5 years of first publishing the program used by CCSI attorneys, (See Registration attached hereto as Exhibit **K**).

44. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S.  The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2005 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys, (See Registration attached hereto as Exhibit **L**).

45. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S.  The Registrar of Copyrights has received

FMI's registration for T.U.C.A.N.S. for the year of 2004[1] on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys, and although Plaintiff has not yet received back from the copyright office the approved registration, FMI has been informed by the copyright office that said registration has in fact been approved, (See Registration attached hereto as Exhibit **M**).

46. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2003 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys, (See Registration attached hereto as Exhibit **N**).

47. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2002 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys, (See Registration attached hereto as Exhibit **O**).

48. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2001 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys, (See Registration attached hereto as Exhibit **P**).

---

[1] The version of the T.U.C.A.N.S. program used by the attorneys to infringe FMI's copyright and cause a breach of the FMI License Agreement, was produced and published in 2004 and known as version 5.6.

49. Defendant CCSI has infringed FMI's copyrights in T.U.C.A.N.S. by encouraging and inducing the unauthorized use of T.U.C.A.N.S. in order to assist Defendant CCSI in the process of debt collection on behalf of Defendant Citigroup.

50. Defendant Citigroup has infringed FMI's copyrights in T.U.C.A.N.S. by the actions and/or omissions to act by their agent and wholly owned affiliate CCSI, who encouraged and induced the unauthorized use of T.U.C.A.N.S. in order to assist Defendant CCSI in the process of debt collection on behalf of Defendant Citigroup.

51. Defendant Gelfand has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and as recent as March 28, 2007.

52. That Defendant Gelfand has at the very least used the T.U.C.A.N.S. system for sixty two (62) individual transactions (see activity report marked Exhibit **Q** attached hereto).

53. That Defendant Gelfand has infringed on FMI's copyrights in T.U.C.A.N.S. and is in breach of the FMI software licensing agreement, by transferring data from the T.U.C.A.N.S. system to his other collection system commonly known as CLS (see activity report marked Exhibit **R** attached hereto).

54. That Defendant Cortez has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for eighty five (85) individual transactions (see activity report marked Exhibit **S** attached hereto).

55. That Defendant Cortez has infringed on FMI's copyrights in T.U.C.A.N.S. and is in breach of the FMI software licensing agreement, by transferring data from the T.U.C.A.N.S. system to his other collection system commonly known as CLS (see activity report marked Exhibit **T** attached hereto).

56. That numerous infringements have taken place and continue to take place through the Defendants inducement of their attorneys, without authorization of the copyright owner, FMI.

57. At all relevant times, Defendants CCSI, Jeanette Brown, John Gillard (the agents servants and employees of CCSI and/or Citigroup) and Citigroup have engaged and continue to engage in the business of knowingly and systematically participating in, facilitating, materially contributing to, and encouraging the above-described unauthorized infringement of Plaintiff's copyrights and exclusive rights. Defendants CCSI, Jeanette Brown, John Gillard (the agents servants and employees of CCSI and/or Citigroup) and Citigroup have actual and constructive knowledge of the infringements committed by their attorneys.

58. By reason of the acts complained of herein, FMI has been and is being irreparably harmed and is entitled to an injunction restraining Defendants, CCSI, Citigroup, its officers, agents, employees and affiliates and John Gillard and Jeanette Brown from using, copying, or displaying the T.U.C.A.N.S. System or the copy written materials/information wrongfully taken from the T.U.C.A.N.S. system pursuant to 17 U.S.C. § 502.

59. FMI is further entitled to recover from Defendants, the damages it has sustained and will sustain as a result of Defendant's willful misconduct, as well as the gains, profits and advantages that Defendant, obtained as a result of its wrongful acts and its costs pursuant to 17 U.S.C.§ 501, *et seq.*.

### COUNT II
### (BREACH OF CONTRACT CITIGROUP ET AL.)

60. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 59 as if fully set forth herein.

61. That on or around September 3, 2007, Defendant CCSI, sent the heretofore designated Letter Agreement signed by defendant John Gillard to FMI.  The gist of said Letter Agreement was that FMI would be paid pursuant to the terms contained in the VSA for all accounts placed through FMI and that CCSI would continue using the services of FMI as per the original VSA.

62. That based upon the terms of this agreement, FMI continued placing and working accounts that were sent to them directly from CCSI.  That from September 5, 2003, up and through the present, all account information that was placed through FMI on the T.U.C.A.N.S. system, still remains on its system.

63. That CCSI was able to forward accounts to FMI for collection purposes and received payments on certain accounts in which recovery was obtainable.  However, on or around December 2004, CCSI began replacing certain accounts and certain account information from the T.U.C.A.N.S. system and began replacing those accounts through another software company intentional and premeditatedly without informing Plaintiff FMI.

64. That unbeknownst to FMI, CCSI continued collecting and receiving payments on these replaced accounts and failing to notify FMI that it was collecting and receiving payments on these replaced accounts and also failing to pay FMI as per the terms of the agreement.

65. FMI has performed all the conditions of the Letter Agreement and remains ready and willing to perform as per its terms.

66. That Defendant CCSI has breached the terms of the Letter Agreement in that, without the knowledge of FMI, or without prior permission, removed and copied all accounts and transferred said information contained within the T.U.C.A.N.S. system to a different software vendor for purposes of replacing these accounts for collection purposes.  That CCSI has

benefited from payments being received on these accounts that were originally placed through FMI and subject to the terms of the Letter Agreement. That CCSI further breached the Letter Agreement because at no time since June 2005 has FMI received, recovered, or been reimbursed for any monies that were received by CCSI on these accounts as per the Letter Agreement.

67. That FMI has requested payment, and Defendant having failed and refusing to pay as per the terms of the Letter Agreement, FMI has been damaged in a sum believed to exceed $2,000,000.00 by reason of the breach of the Letter Agreement.

WHEREFORE, Plaintiff prays for judgment in a sum to be determined through discovery, plus interest from the date in which payments was due and owing, and costs.

## COUNT III
### (BREACH OF CONTRACT GELFAND & CORTEZ)

68. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 67 as if fully set forth herein.

69. That on or around the time the VSA was entered into in 2001, Gelfand and Cortez entered into a Licensing Agreement with FMI for the benefit of CCSI. That pursuant to the licensing agreement each party was to receive certain account information through the T.U.C.A.N.S. network. That this information was placed by CCSI and forwarded to FMI to distribute to all outside counsel.

70. FMI, pursuant to the VSA, did forward certain account information through the T.U.C.A.N.S. system directly to the Gelfand and Cortez. That both Gelfand and Cortez had access to this information through FMI which was the software provider. That both Gelfand and Cortez paid no fee for this service as set forth in the licensing agreement.

71. The license agreement entered into between Gelfand and Cortez and FMI for the benefit of Defendant CCSI specifically states that they have read the terms and conditions and agree to be bound by all those terms and conditions.

72. That on or around June 10, 2005, both Gelfand and Cortez received written communication terminating the licensing agreement with FMI. Furthermore, both Gelfand and Cortez were made known that all information remained the property of FMI and that no duplication, publication, copying or transfer of information could take place.

73. That Gelfand and Cortez were also aware that all information should be destroyed upon the termination of their licensing agreements with FMI.

74. That both Gelfand and Cortez continued to use the TUCANS system after the termination of the licensing agreement. That this unauthorized use of the system upon termination is a direct breach of the licensing agreement previously entered into.

75. That at no time was permission granted to use or obtain certain information that was the property of FMI upon termination.

76. That both Gelfand and Cortez still continue to access the system and obtain information for their own benefit.

77. That both Gelfand and Cortez have removed, copied, transferred, and obtained information from the T.U.C.A.N.S. system in direct violation and breach of the Licensing Agreement.

78. That based upon the aforementioned provisions of the Licensing Agreement, Gelfand and Cortez breached the Licensing Agreement by accessing the T.U.C.A.N.S. system after the termination date.

79. Plaintiff has been damaged in the sum believed to exceed $100,000.00 by reason of the breach of the licensing agreement.

WHEREFORE, Plaintiff prays for judgment in a sum to be determined through discovery, plus costs.

## COUNT IV
### (FRAUD)

80. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 67 as if fully set forth herein.

81. On or around June 20, 2003, FMI received a written letter from CCSI signed by Defendant Jeanette Brown in which, among other things, she stated that CCSI was currently evaluating other system providers and that FMI might soon be replaced, but "[s]hould that happen, we will ensure you are paid the fee required by the [VSA] with respect to accounts that were processed on your (FMI) system." See letter attached as Exhibit **U**.

82. As previously recounted, the VSA between CCSI and FMI was terminated effective September 5, 2003. And as also previously recounted, CCSI sent the Letter Agreement to FMI.

83. The statements set forth in the both communications were false and untrue. In truth, and in fact, Defendant CCSI continued to utilize FMI for its services until such other software providers could obtain the information that resided and remained on T.U.C.A.N.S. Once Defendant CCSI was able to remove the information from T.U.C.A.N.S. and re-place it on another provider's system it failed to report any further payments made on those accounts which had been placed through FMI and were now re-placed by another provider.

84. That the statements set forth in the Letter Agreement were known by Defendant CCSI to be false when it began replacing the accounts prior to and after the termination of the Licensing Agreement by FMI to CCSI's agents. That this fraudulent intent by CCSI deprived FMI of its fee as promised would be paid in the June 20, 2003, letter and the Letter Agreement.

85. That FMI believed the terms of the June 20, 2003, letter and the Letter Agreement to be true and relied on it by placing certain accounts through its T.U.C.A.N.S. network and distributing them to CCSI's agents. As a result of CCSI's fraudulent conduct, FMI provided to its detriment work support to these agents without the compensation as promised in the June 20, 2003, letter, and the Letter Agreement.

86. By reason of the above, Plaintiff has been damaged in a sum believed to exceed $2,000,000.00 has been paid to FMI.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, FMI, prays that this Court:

1. Declare that Defendant Citigroup has infringed and induced others to infringe FMI's rights in and to the software and network;

2. Preliminarily and permanently enjoin Defendant, Citigroup, its subsidiaries and affiliates and their officers, directors, agents and representatives, attorneys and all persons acting or claiming to act on its behalf or under its direction and authority from (i) copying, selling, distributing, displaying or otherwise using for any purpose the T.U.C.A.N.S. system and/or the wrongfully obtained copy written materials/information without FMI's express consent or in any other way further infringing on FMI's copyrights in T.U.C.A.N.S., (ii) engaging in any action that allows a third party to copy, sell, distribute, display or otherwise use for any purpose the T.U.C.A.N.S. system without FMI's express consent.

3. Order the impounding of all unauthorized copies of the T.U.C.A.N.S. system;

4. Order that any and all copy written materials/information be deleted from any system that said materials/information has/had been transferred to.

5. Order that Citigroup and CCSI immediately advise all attorneys who worked with the T.U.C.A.N.S. system of any order issued by this Court;

6. Order Citigroup and CCSI to file with the Court and to serve counsel for FMI, within thirty (30) days after service of this Court's order a written report and certified under oath setting forth the manner and form in which they have complied with Court's order.

7. Award FMI its actual damages;

8. Order an accounting for the amounts recovered on behalf of Citigroup and CCSI from the unauthorized use of the T.U.C.A.N.S. systems, which is the Defendants's profit as a direct and proximate result of Defendants's inducement based upon the fact that amounts recovered would be after the Citigroup and/or CCSI, charged off the amount as a loss which would be according to the Defendants from September 1st, 2003, in the amount of approximately $235,000,000.00 (pending an audit) or in the alternative according to the Plaintiff, from June 10th, 2005, in the amount of approximately $45,000,000 (pending an audit) and order such profits to be paid to FMI pursuant to 17 U.S.C. § 504(b);

9. Alternatively, FMI is entitled to the aforementioned amount and its actual damages in an amount equal to its normal retail price per individual licensed user which is between $3,750.00 to $5,000.00 based on an approximate average of 25 users per firm and based upon approximately 48 firms or  $4,500,000.00 to $6,000,000.00

10. Alternatively, FMI is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less then $150,000.00 for all individual infringements involved in this action which is based upon the number of individual attorney firms which is approximately forty eight (48) firms or $7,200,000.00;

17

11. Alternatively, FMI is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less then $150,000.00 for all individual infringements involved in this action which is based upon the number of individual occurrences of infringement at the transaction level which is in excess of 100,000 individual infringements or in excess of one billion dollars;

12. Declare Defendants Gelfand and Cortez are in breach of the FMI Software Licensing Agreement and have infringed on FMI's copyrights.

13. Award FMI from Gelfand the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less then $150,000.00 for all individual infringements involved in this action after July 10, 2005, which is at least sixty two (62) or $9,300,000.00.

14. Award FMI from Cortez the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less then $150,000.00 for all individual infringements involved in this action after July 10, 2005, which is at least eighty five (85) or $12,750,000.00.

15. Award FMI from Cortez the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of not less then $150,000.00 for all individual infringements of transferring copy written information to his other collection system prior to the license termination involved in this action after prior to July 10, 2005 which is at least three hundred thirty two (332) or $49,800,000.00.

16. Award FMI punitive damages for the willful and wanton nature of Defendants's acts;

17. Award FMI interest, costs and its attorneys' fees pursuant to 17 U.S.C. § 505; and

18. Award such other further relief as this Court deems just and proper.

Dated: September 6, 2007                      Respectfully submitted,
                                                                                **FM INDUSTRIES INC**

                                                  _____s/Wayne Rhine_____
                                                                 One of its Attorneys

**WAYNE RHINE**
**Attorney for Plaintiff**
**ARDC #2323990**
**500 W Madison St. #2910**
**Chicago, IL. 60661**
**Phone:  (312)474-4532**