```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
     FM. INDUSTRIES, et al.,           ) Docket No. 07 C 1794
 4                                     )
                    Plaintiffs,        )
 5                                     )
              vs.                      )
 6                                     )
     CITICORP CREDIT SERVICES, INC., et ) Chicago, Illinois
 7   al.,                              ) January 10, 2008
                                       ) 9:15 o'clock a.m.
 8                  Defendants.        )

 9            TRANSCRIPT OF PROCEEDINGS - MOTION
           BEFORE THE HONORABLE SUZANNE B. CONLON
10
     APPEARANCES:
11
     For the Plaintiff:    FRIEDMAN & WEXLER, LLC
12                         BY: MR. WAYNE D. RHINE
                           500 West Madison Street, Suite 2910
13                         Chicago, Illinois  60661
                           (312) 474-1000
14
                           LAW OFFICES OF MITCHELL F. ASHER
15                         BY: MR. MITCHELL F. ASHER
                           157 North Brockway
16                         Palatine, Illinois  60067
                           (708) 359-8880
17
                           DAVIS, MANNIX & McGRATH
18                         BY: MR. WILLIAM T. McGRATH
                           125 South Wacker Drive, Suite 1700
19                         Chicago, Illinois  60606
                           (312) 332-3033
20
     For the Defendants:   DYKEMA GOSSETT, PLLC
21                         BY: MR. TODD GALE
                           10 South Wacker Drive, Suite 2300
22                         Chicago, Illinois  60606
                           (312) 627-2139
23
     Court Reporter:       CAROLYN R. COX, CSR, RPR, CRR
24                         Official Court Reporter
                           219 S. Dearborn Street, Suite 1854-B
25                         Chicago, Illinois  60604
                           (312) 435-5639
```

```
 1       (The following proceedings were had in open court:)
 2            THE CLERK:  07 C 1794, FM Industries v. CitiCorp
 3   Credit Services, motions.
 4            MR. GALE:  Good morning, your Honor; Todd Gale for the
 5   defendant, CitiCorp Credit Services Incorporated, Citibank
 6   South Dakota, N.A., and CitiCorp.
 7            MR. DUFFY:  John Duffy on behalf of defendant, Law
 8   Offices of Ross Gelfand, LLC
 9            MR. RHINE:  Good morning, your Honor; Wayne Rhine on
10   behalf of the plaintiff FM Industries.
11            MR. McGRATH:  William McGrath on behalf of the
12   plaintiffs.
13            MR. ASHER:  Mitchell Asher on behalf of the plaintiff,
14   your Honor.
15            THE COURT:  Good morning.  This matter comes up on
16   plaintiffs' motion to extend the discovery cutoff date, which
17   is today, so this is actually the third discovery cutoff date,
18   and that extension as to FMI only to allow additional time to
19   complete oral discovery.  I take it you mean depositions by
20   that.  The defendant has filed an extensive opposition to the
21   motion, and I see this case is as contentious as ever.
22            Why, Mr. Rhine, why haven't you taken depositions
23   before, including the defendants' expert who was disclosed
24   months ago?
25            First of all, why don't you explain to me what you
```

1  have taken by way of depositions, what you've taken and when.
2          MR. RHINE:  All right.  Judge, we did take the
3  deposition of the defendant Gelfand last week.  That is the
4  sole deposition.  We have had depositions taken.
5          THE COURT:  Right, a week before the third discovery
6  cutoff.
7          MR. RHINE:  That is correct, your Honor.  If I may
8  explain.  Judge, we wanted to have the written discovery so
9  that we would be in a position to adequately take these
10 depositions.  Without the written discovery to take these
11 depositions, without that information, it would not be of much
12 use.  We wanted this information so that we can question --
13         THE COURT:  Don't talk about "this information."  Tell
14 me specifically what it is.  I want to know exactly what it is
15 that you requested and did not receive, and has it been
16 otherwise determined against you by a judge, Magistrate Judge
17 Denlow?
18         MR. RHINE:  Judge, there was a number of matters that
19 we were seeking including the audits of these various accounts.
20 This is a complaint for copyright.
21         THE COURT:  All right.  Tell me exactly what audits.
22         MR. RHINE:  CCSI and/or its parent company conducts
23 audits of the attorneys that handle collection matters for
24 them.  There are some 46 law firms throughout the United
25 States, including several here in Chicago, that handle the

```
 1  collection work for CCSI or for Citicorp.
 2          THE COURT:  Who conducted the audit or audits?
 3          MR. RHINE:  Citicorp conducts the audits to ascertain
 4  exactly what the collection attorneys are doing.  The reason we
 5  needed --
 6          THE COURT:  Did Magistrate Judge Denlow consider this
 7  issue?
 8          MR. RHINE:  We raised that issue.  The issue was --
 9  the answer to the request for the audits was that was
10  attorney-client privilege.  We disagreed with Judge Denlow on
11  that issue.
12          THE COURT:  Well, that's the end of it.  He made a
13  determination against you.  That's not good cause to extend
14  discovery.  He's already -- the magistrate judge has already
15  ruled that you're not entitled to that information.  That's the
16  end of it.
17          MR. RHINE:  All right.  Judge, there is other
18  information.  We need the accounts.  What we're trying to seek
19  here is to what extent the defendant, defendants plural,
20  profited by use of the TUCAN system.  That is basically the
21  information that we were seeking.  We have been stonewalled,
22  delayed, everything you can think of in getting that
23  information.
24          THE COURT:  Did you file a motion to compel on that
25  issue?
```

1        MR. RHINE:  There were several motions to compel.

2        THE COURT:  There were a lot of motions to compel.

3        MR. RHINE:  That's correct.  On 10/1/07, Judge Denlow

4 indicated the defendants had failed to comply, they were

5 ordered to comply.  They previously sent us a handful of

6 documents, most of which were of no use to us, they were

7 duplications of the vendor service agreement.

8        THE COURT:  Stop characterizing and just tell me what

9 Judge Denlow ruled and what happened with regard to his ruling.

10       MR. RHINE:  He ordered the defendant to produce the

11 documentation that we require.  On 11/28, defendant turned over

12 to us some 5,000 documents which we felt was still deficient.

13 We had our 37(2) conference.  On 12/19, we were told that there

14 are additional documents, and that was turned over to us I

15 believe on 12/20, the following day.  That did not give us much

16 time to prepare our depositions.  We had to review over 5,000

17 pages of discovery in this case in order to prepare for these

18 depositions.

19       I would point out, your Honor, in some of the earlier

20 discovery that was tendered to us, we have learned for the

21 first time that CCSI, Citicorp Credit Services, is not -- does

22 not receive any profits from the collection of these accounts,

23 that they act as a servicing entity for Citygroup.  As a result

24 of that, we filed a motion -- for leave to file an amended

25 complaint adding additional parties, which your Honor granted.

1  We filed our amended complaint.  The defendants were given time
2  to answer or otherwise plead.  We filed a motion to dismiss,
3  which your Honor heard after briefing.  And a ruling on the
4  motion to dismiss was I believe on December 5th.
5         As a result, a couple of individuals were dismissed
6  out of the case.  One count on fraud was dismissed by your
7  Honor.  As to the remaining entities, the remaining counts,
8  your Honor gave them until December 20th to answer.  With
9  December 20th giving us a cutoff date of 1/10, Judge, and with
10 the intervening holidays, that did not give us much time to
11 proceed, and I don't think it would have been prudent or I
12 would be doing my client a service by taking depositions
13 without first having received this documentation, which we did
14 not -- as I've indicated, did not receive finally until 12/19.
15 We received a batch on 11/28, and then the second group was
16 delivered to us on the 19th of December, one day prior to the
17 time for the answer.
18        As a result, Judge, we were not able -- we did attempt
19 to take these depositions.  We noticed up depositions in Kansas
20 City for the two main people from Citygroup, Ms. Jeanette Brown
21 and John Gillard, along with several other individuals.  We
22 received notification from counsel from the defendant that
23 those depositions were not received.  Judge, we cannot
24 adequately prepare for this case unless we take those
25 depositions.

1           THE COURT: Would you like to respond?
2           MR. GALE: Yes, ma'am, I would. Initially FMI filed a
3    complaint that was about inducement to infringe copyright.
4    They served very broad document requests. We responded with
5    documents and with objections. They moved to compel on each
6    and every one of those document requests. We went through it
7    all with Magistrate Judge Denlow. We produced everything that
8    Magistrate Judge Denlow told us to produce, and he terminated
9    that motion to compel. They had it all.
10          Then in September your Honor granted a motion for a
11   second amended complaint. That included new causes of action;
12   one for breach of contract, one for fraud. That broadened the
13   scope of discovery necessarily. Even though Magistrate Judge
14   Denlow had already terminated their motion to compel, based on
15   the new complaint, we went back and produced more documents.
16   We had discussions with Magistrate Judge Denlow both in October
17   and in November about those, and we produced to them
18   approximately 5,000 pages to them at the end of November.
19          We gave them this many documents, these very
20   documents, in December, I want to say it was December 18th, in
21   response to another specific request that they made in front of
22   Magistrate Judge Denlow. So they have had all of these
23   documents with the exception of this many, and I'll come back
24   to these in a moment, since the end of November and never
25   served a deposition notice.

1    They then noticed up another motion to compel as to
2  each and every document request they have ever served in this
3  case.  And on November 19th and on November 26th, we went
4  through them one by one with Magistrate Judge Denlow, and the
5  only thing that Magistrate Judge Denlow told us to do
6  differently than what we had already done was to give them
7  these, and it took a couple of weeks to get them these.
8         THE COURT:  By these, can you describe generally what
9  you are holding up for the record.
10         MR. GALE:  I'm sorry.  These are communications
11 between my client, CCSI, and a company called Fair Isaac, who
12 created a software program or already had a software program
13 that's similar to FMI's program.  What happened was CCSI and
14 FMI quit doing business with each other, and then CCSI started
15 doing business with this company, Fair Isaac, who produced
16 another product.  CCSI -- excuse me -- FMI was of the opinion
17 that Fair Isaac must have somehow infringed their copyright,
18 and they wanted to see all communications between the parties.
19 This is what Magistrate Judge Denlow ordered produced, and this
20 is what we gave them.  And then these very documents were among
21 those that were dealt with this last Monday in the most recent
22 hearing before Magistrate Judge Denlow.
23         Attached to their motion, to FMI's motion to extend
24 the discovery cutoff, were two motions that they filed before
25 Magistrate Judge Denlow, the motion to compel again on each and

1  every document request that they served on us in this case and
2  a motion for sanctions.  That hearing happened on Monday, and,
3  your Honor, we delivered that transcript to you on Monday
4  afternoon so you would know what happened with those motions
5  that they said was part of the basis and why they needed to
6  extend the discovery cutoff.
7              As to the motion for sanctions, Judge Denlow
8  characterized it as ridiculous.  As to the motion to compel,
9  Judge Denlow said that it was out of left field.  He said that
10 if they filed another motion to compel like that with no basis
11 that he would issue sanctions, and as he said, I never issue
12 sanctions.
13             Then, undeterred, FMI raised still another motion
14 standing at the lectern, and Judge Denlow said I have enough
15 problems with the motions that you actually file with me, I
16 won't have you coming in off the street.  All good things must
17 come to an end.
18             This has been thoroughly examined and dealt with by
19 Judge Denlow again and again and again.  Judge Denlow has been
20 more than patient with FMI.  We have been completely compliant
21 in the discovery requests.  It's time for this to be done.
22 They chose not to serve deposition notices ever on CCSI until a
23 week ago today.  They noticed eight depositions for today and
24 tomorrow.  Today is the discovery cutoff.  They never noticed
25 those people before.  We had agreed to produce some of those

1  people back in October, and then when the discovery cutoff
2  moved in anticipation of our producing new documents, those
3  depositions were taken off the calendar, and when they got the
4  documents in late November, they never noticed the depositions
5  up until last Thursday, never.  Any delay is of their making.
6  Any difficulty they have had is of their making.  We have done
7  our best to comply fully.  We have complied absolutely with
8  every order from Judge Denlow.  It's time for this to be done.
9         MR. RHINE:  If I may reply, your Honor.
10        THE COURT:  Yes.
11        MR. RHINE:  There was an amended complaint filed.  The
12 answer to that amended complaint was not filed until December
13 20th, which was only some 21 days prior to the cutoff.  Judge,
14 without the written discovery, which we didn't receive the
15 final batch until December 19th, to take depositions would be
16 literally meaningless to the detriment of our client that we
17 could --
18        THE COURT:  What is it about the documents that were
19 produced on December 20th that precluded discovery of other
20 issues in the case before then?
21        MR. RHINE:  What we were --
22        THE COURT:  It seemed like a very narrow class of
23 information was contained in these communications between a
24 defendant, CCSI, and a third party.
25        MR. RHINE:  What we were basically looking for -- we

1  were told that there was a complete sweep, and they don't
2  exist, although we have information to the contrary, Judge, but
3  I am not going to get into that.
4       THE COURT: No, the magistrate, I said, has determined
5  that, and to the extent you're trying to relitigate or
6  mischaracterize what occurred before the magistrate, I find
7  that very disturbing.
8       MR. RHINE: No, I am not trying to do that. No, I am
9  not trying to do that.
10      In answer to your Honor's question, what we were
11 trying to find is information from CCSI to the collection
12 attorneys dealing with what they were told to do or not to do
13 concerning the use of the TUCAN system once these licensing
14 agreements had been terminated and the vendor service
15 agreement --
16      THE COURT: How did this group of documents produced
17 on December 20th have -- inform any of those issues?
18      MR. RHINE: There's only I believe two documents that
19 relate to that. One is basically a note on a calendar; another
20 is a form of an e-mail. But without that information, Judge,
21 it would have been difficult to proceed with these depositions.
22      We did attempt to take the depositions in October, and
23 I would point out there was an issue about Mr. Gale didn't want
24 to go out there twice. He wanted to conduct everything on one
25 day. We could not reach an agreement on that, and it was

1   unilaterally -- in my opinion, unilaterally canceled by Mr.
2   Gale.
3           THE COURT:  Anything further?
4           MR. RHINE:  Yes, Judge.  On the one deposition that we
5   did take last week, some new information came to light, and Mr.
6   McGrath would like to address that issue.
7           MR. McGRATH:  Well, just briefly, your Honor.  It was
8   disclosed for the first time in that deposition that Gelfand
9   had provided the software to a third party that we knew nothing
10  about prior to that, so that, you know, is just an example of
11  further information that needs to be explored a little bit.
12          THE COURT:  Why couldn't that deposition have been
13  taken earlier?
14          MR. McGRATH:  Why couldn't that have been taken
15  earlier?
16          THE COURT:  Yes.
17          MR. McGRATH:  For the very reasons Mr. --
18          THE COURT:  How did -- the documents produced on the
19  20th, did those documents identify the person who was deposed?
20  You still have to make the connection for me.
21          MR. McGRATH:  I don't believe the documents provided
22  any of the information that came forth in that deposition about
23  this third party.
24          THE COURT:  No, I think you're deliberately
25  misunderstanding me.  I want to know why you could not -- you

```
 1  didn't have the identity of the person you deposed before and
 2  didn't have the basis to depose that person before these
 3  documents were produced on the 20th of December?
 4          MR. McGRATH:  No, that's not the case.
 5          THE COURT:  I didn't think so.
 6          All right.  Anything further?
 7          MR. ASHER:  Your Honor, if I may.
 8          THE COURT:  Yes.
 9          MR. ASHER:  I was present at the deposition, and Mr.
10  Gelfand testified that he knew nothing about an R&B collection
11  agency, that was this collection agency.  This was a totally
12  new revelation to Mr. Rhine, who was also present at the
13  deposition.  It appears that Mr. Gelfand had given the software
14  to this R&B collection agency.  R&B collection agency, he
15  stated, was working for CCSI.  CCSI never disclosed to us that
16  there was this entity of R&B collection agency and neither did
17  Mr. Gelfand, so it was a totally new experience to find out --
18          THE COURT:  Well, it's really curious.  It seems to me
19  Mr. Gelfand is a central figure in this case, and it's also
20  very curious to me that you don't even depose him until a week
21  before the third extension of discovery runs, runs out, your
22  time ran out, and the last extension was three months, and it
23  was the last extension.
24          Well, I don't find good cause has been shown to extend
25  discovery, much less extend discovery only for FM Industries.
```

1   I think the plaintiffs' motion to a large extent is based on
2   innuendo and characterizations that are contrary to the
3   objective record, and I have read the transcripts of two
4   hearings before Magistrate Judge Denlow.
5          It appears to me that he has thoughtfully and
6   carefully gone over motions, an unusual amount, as I said
7   earlier, a contentious barrage of motions including a meritless
8   sanctions motion.  I don't find that the plaintiff has used due
9   diligence in seeking depositions and doesn't show good cause
10  for failing to take depositions of key witnesses before the
11  last week after the last extension of discovery is filed.  And
12  as far as the amended complaint, I have heard on the side
13  granting that motion, even though it turned out that the
14  amended complaint was inadequate in several basic respects and
15  did delay the proceedings, it didn't delay discovery, nor was
16  discovery stayed.  No prejudice has been shown to the plaintiff
17  that would justify failure to proceed with discovery as opposed
18  to tons and tons of paper and motions.  So the plaintiffs'
19  motion to extend discovery as to the plaintiff is denied.
20          MR. GALE:  Thank you, your Honor.
21          MR. RHINE:  Thank you.
22          MR. DUFFY:  Thank you, your Honor.
23          MR. ASHER:  Thank you, your Honor.  Procedurally, your
24  Honor, may I have leave to file an appearance on behalf of FMI?
25          THE COURT:  Yes, you do have to comply with the local

1  rules.  There is a form in the clerk's office that you need, or
2  maybe it's online now.
3          MR. ASHER:  It was online.  I filed it electronically.
4  I want to make sure I can get it on file.  Thank you, your
5  Honor.
6          MR. DUFFY:  Thank you, your Honor.
7    (Which were all the proceedings had in the above-entitled
8  cause on the day and date aforesaid.)
9    I certify that the foregoing is a correct transcript from the
   record of proceedings in the above-entitled matter.
10
                                           1-23-08
11  Carolyn R. Cox                         Date
    Official Court Reporter
12  Northern District of Illinois
13
14
15
16
17
18
19
20
21
22
23
24
25