**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **FM. INDUSTRIES, INC.,** an Illinois Corporation | ) ) ) ) |
| | ) **Case No. 08 C 517** |
| **Plaintiff,** | ) ) |
| | ) **Judge Joan H. Lefkow** |
| | ) |
| **Vs.** | ) **Magistrate Judge Arlander Keys** |
| | ) |
| **The Law Offices of Ross Gelfand, LLC.,** | ) |
| **R & B Collections Inc., a Georgia Corporation;** | ) |
| **Hosto, Buchan, Prater & Lawrence;** | ) |
| **PLLC, as Successor in Interest to Hosto &Buchan;** | ) |
| **PLLC; Law Offices Harris & Zide;** | ) |
| **Regent & Associates, LLP; and James D. Cortez** | ) |
| **Attorney at Law** | ) |
| **Defendants.** | ) |

<u>**VERIFIED SECOND AMENDED COMPLAINT**</u>

Plaintiff, FM. INDUSTRIES, INC. ("FMI") hereinafter referred to as FMI, through undersigned counsel, allege as follows based upon personal knowledge as to the allegations concerning themselves and on information and belief as to all other allegations for its Complaint against Defendants, The Law Offices of Ross Gelfand, LLC., ("Gelfand"), R & B Collections, Inc., ("R & B"), Hosto, Buchan, Prater & Lawrence PLLC as Successor in Interest to Hosto & Buchan, PLLC, ("H&B"), Law Offices of Harris & Zide, ("H&Z"), Regent & Associates, LLP, ("R&A"), and James D. Cortez Attorney at Law ("Cortez").

## THE PARTIES

1. "FMI" is an Illinois corporation with its principal place of business in Chicago, Illinois. FMI is in the business of developing computer software and networks that develop, collect and transmit data utilized in the debt collection industry.

2. FMI is the copyright owner of The Ultimate Collection and Network Software Program, more commonly known by its acronym T.U.C.A.N.S. that was licensed to the defendants except R & B and is in part the subject of this complaint.

3. FMI had previously commercially licensed the T.U.C.A.N.S. Program normally for between $3,750.00 to $5,000.00 per user, along with a support fee of 18% per year (see Affidavit of Michael Friedman, President of FMI and redacted invoices of FMI attached hereto as Group Exhibit **A**)

4. "Gelfand" is a law firm with its principal place of business located in Roswell, Georgia, and is/was an agent of Citicorp Credit Services, Inc., (CCSI) and is an attorney that represents and/or represented Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection

5. "R&B" is a Georgia Corporation and is a national collection agency with its principal place of business located in Roswell, Georgia and is engaged in the business of debt collection.

6. "H&B" is a law firm with its principal place of business in Little Rock, Arkansas, and is/was an agent of CCSI, and is an attorney that represents and/or represented Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection.

7. "H&Z" is a law firm with its principal place of business in South Pasadena, California, and is/was an agent of CCSI, and is an attorney that represents and/or represented Citigroup and

was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection.

8.  "R&A" is a law firm with its principal place of business in Houston, Texas, and is/was an agent of CCSI, and is an attorney that represents and/or represented Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection.

9. "Cortez" is a law firm with its principal place of business in Livonia, Michigan, and is/was an agent of CCSI, and is an attorney that represents and/or represented Citigroup and was a licensed user of the T.U.C.A.N.S. system for the benefit of Citigroup and is engaged in the business of debt collection.

## JURISDICTION AND VENUE

10. This is an action by FMI against the defendants for copyright infringement, and software piracy for the unlicensed use of the T.U.C.A.N.S. program.  The claim arises from the Copyright Act of 1976.  17 U.S.C. § 101 *et. seq*.  This court, therefore, has jurisdiction pursuant to 28 U.S.C.§ 1338(a).

11. Further, this is an action for breach of contract and thus venue as to the law firm defendants (not R&B) is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. § 1391(a) and is further proper based upon the venue provisions contained in the FMI license agreement between FMI and the law firm defendants that represented and/or represent Citigroup who utilized the T.U.C.A.N.S. program the subject of this complaint.

12. Venue as to R&B is proper in the Northern District of Illinois, Eastern Division pursuant to 28 U.S.C. §1332 as R&B is a citizen of Georgia, FMI is a citizen of Illinois and the amount in controversy exceeds $75,000.

**GENERAL ALLEGATIONS**

13. FMI, a software developer, by its employees, agents, and servants, developed a software program known by its acronym, T.U.C.A.N.S., which stands for The Ultimate Collection and Network Software.  T.U.C.A.N.S. is a program that is utilized in the debt collection industry.

14. FMI, by its employees, agents, and servants, also developed a computer network that allows the electronic transfer of the data developed and maintained by T.U.C.A.N.S., known as TUCNET and is integrated into the T.U.C.A.N.S. program.

15. The T.U.C.A.N.S. System provided a systematic communication interface between a large-scale debt collector, such as Citicorp Credit Services, Inc., (CCSI) on behalf of Citigroup and the attorneys (CCSI's agents) retained by CCSI on behalf of Citigroup, the creditor and owner of the credit cards debt in its debt collection efforts.

16. In 2001, CCSI recognized the T.U.C.A.N.S. System could be a valuable tool to assist CCSI and its agents and attorneys on behalf of the creditor Citigroup.  Therefore in May 2001, CCSI entered into a ten-year services agreement with FMI, referred to as the Vender Service Agreement (hereinafter the "VSA").

17. Pursuant to ¶ 1.3 of said agreement, FMI was to provide the TUCANS system to Citigroup's agents and attorneys (A copy of the VSA is attached hereto as Exhibit **B**).

18. Pursuant to ¶ 8.7 of said agreement, CCSI on behalf of itself and its agents and attorneys expressly acknowledged that FMI is the copyright owner of the system, software, and related documentation, and that FMI retained all right, title, and interest in and to the same.

19.  FMI also agreed that the system it developed and maintained for CCSI would be capable of  "allowing attorneys retained by CCSI on behalf of Citigroup to systemically transfer file

20. The VSA required that the collection attorneys, who were linked to CCSI through FMI via FMI's systems, sign licensing agreements with FMI. (A sample licensing agreement is attached hereto as Exhibit **C**).

21. The licensing agreement was made a part of and incorporated into the VSA pursuant to ¶ 2.3.

22. Said licensing agreements recognized FMI's exclusive ownership rights over FMI Software, FMI Systems, all materials provided under the licensing agreement and all FMI Information (Licensing Agreement ¶1(K).

23. The licensing agreement held that the FMI System-related intellectual property rights are and shall at all times remain the sole and exclusive property of FMI (Licensing Agreement ¶2(c).

24. The licensing agreement held that the software was provided to their attorneys and agents at no cost for their exclusive use for CCSI's benefit only as the fees and royalties associated with the use of the system were paid to FMI from Citigroup, Inc., as part of the VSA.

25. The licensing agreement also prohibited the attorneys from accessing the system after the termination of the licensing agreement and further required that the attorneys certify within 30 days that they had deleted all of FMI's software. (Licensing Agreement ¶4(c)(6).

26. The licensing agreement also stated that "Customer MAY NOT: use, copy, modify or transfer the FMI Software, the FMI System or any FMI Information, or any copy, modification or merged portion in whole or in part, except as expressly provided for in this Agreement." Further, the licensees "MAY NOT transfer possession of any copy,

modification or merged portion of the FMI Software, the FMI System or any FMI Information to another party, unless it obtains FMI's prior written consent, which shall not be unreasonably withheld." (Licensing Agreement ¶3(b)(1) and (b)(4).

27. Within a few months after the VSA was signed, FMI implemented its systems, linking CCSI with its agents nationwide. During the first two years or so after the execution of the VSA, CCSI through its attorneys and agents collected over $250,000,000 (two hundred fifty million) of unpaid debt owing to Citigroup using FMI's T.U.C.A.N.S. systems.

28. On July 2, 2003, over two years after the VSA was signed, FMI received written notice of CCSI's desire to cancel the VSA without cause.

29. Nevertheless, in a letter ("Letter Agreement") signed by John Gillard an officer of CCSI and dated September 3, 2003, CCSI requested permission from FMI to begin reutilizing T.U.C.A.N.S. and its systems to continue to place accounts to their attorneys and agents, which it did until December 2003 (See Exhibit **D**).

30. That the Letter Agreement specifically stated that although the terms of the original VSA were no longer in effect as of September 5, 2003, FMI would be paid the same rate for "any accounts processed on T.U.C.A.N.S. after that date at the same rate set out in the agreement [the VSA]."

31. CCSI stopped placing new accounts at the end of 2003.

32. CCSI and their attorneys and agents continued to utilize the T.U.C.A.N.S. and FMI's systems on all accounts placed prior to January 1, 2004 until CCSI stopped utilizing T.U.C.A.N.S. and FMI's systems altogether on or about May 2005.

33. That pursuant to the terms of the licensing agreement entered into by all attorneys, FMI provided for a detailed listing of all obligations of which a customer is licensed to do or not to do under  (¶3(A)(B) (1-2, 1-6 of the licensing agreement)**.**

34. That FMI clearly sets forth in its licensing agreement that "If a customer does any of the prohibited things in ¶3(B) 1-6 of the licensing agreement, it shall be in material breach of this agreement and the licensing granted shall be automatically and immediately terminated, not withstanding any other remedies available".

35. After CCSI stopped utilizing FMI's systems, FMI sent notice to the attorneys who were linked to CCSI via FMI's system that the FMI licensing agreements were terminated and that the attorneys: (a) could no longer access the software to bring up any information on accounts which would display data, run reports that display data, take pictures and/or screen shots that display data, and/or transfer any data that was entered into the T.U.C.A.N.S. system to any other systems or medium; (b) not copy modify or transfer the FMI software the FMI system or any FMI information; (c) not transfer possession of any copy, modification or merged portion of the FMI software, the FMI system or any FMI information; (d) not allow any person or entity to have access to or contract with FMI software the FMI system or any FMI information; (e) must delete the software from their hardware, and (f) should send written confirmation that the software had been deleted from their computers. (Termination Notice for Licensing Agreements Exhibit **E**).

36. That Defendant H&B received the letter of termination of the license agreement as evidenced by the certified mail receipt.  See Exhibit **F**.

37. That Defendant H&B continued to utilize the T.U.C.A.N.S. system in breach of the FMI license agreement.

38. That Defendant H&Z received the letter of termination of the license agreement as evidenced by the certified mail receipt. See Exhibit **G**.

39. That Defendant H&Z continued to utilize the T.U.C.A.N.S. system in breach of the FMI License Agreement.

40. That Defendant R&A received the letter of termination of the license agreement as evidenced by the certified mail receipt. See Exhibit **H**.

41. That Defendant R&A continued to utilize the T.U.C.A.N.S. system in breach of the FMI License Agreement

42. That Defendant Cortez received the letter of termination of the license agreement as evidenced by the certified mail receipt. See Exhibit **I**.

43. That Defendant Cortez continued to utilize the T.U.C.A.N.S. system in breach of the FMI License Agreement

44. That unbeknownst to FMI and upon information and belief, R&B was provided access to and gained control of the T.U.C.A.N.S. software from Gelfand beginning in at least 2001 in direct violation of the licensing agreement entered into between FMI and Gelfand. That no letter of termination was sent to R&B based on its failure to have any valid licensing agreement with FMI. Furthermore, this unauthorized and illegal use by R&B of the T.U.C.A.N.S. system was unknown to FMI at the time in which the termination notices were sent out.

45. That upon information and belief Defendant R&B continued to unlawfully utilize the T.U.C.A.N.S. system without any valid licensing agreement or authorization.

46. That at no time did Defendant Gelfand request in writing authorization to allow a third party such as R&B access to the system as mandated in ¶1(M) and ¶3(B) 4-5 of the licensing agreement.

47. That at no time including through the date of the filing of this complaint has any of the named Defendants and/or any other attorneys that entered into the license agreement with FMI for the benefit of CCSI and/or Citigroup requested permission from FMI to access the T.U.C.A.N.S. system after the termination of the license agreement between the attorneys and FMI.

48. That at no time through the date of the filing of this complaint has any of the named Defendants and/or attorneys requested a new license agreement with FMI to then legally be able to access the T.U.C.A.N.S. system after the termination of the license agreement between the attorneys and FMI.

**COUNT I**
**COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. § 501, *et. seq.***
**(Hosto, Buchan, Prater, & Lawrence, PLLC, Harris & Zide, Regent & Associates, James D. Cortez, and R & B Collections, Inc.**

49. FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

50. That as of January 31, 2001 a company by the name of FM. Ware, Industries, Inc. was the exclusive owner of the copyright of the T.U.C.A.N.S. Software, including all right title and interest in the software. Michael Friedman individually was the sole share holder of FM. Ware Industries, Inc.

51. That on January 31, 2001, FM Ware Industries, Inc., executed a transfer agreement of all right title and interest of the T.U.C.A.N.S. Software including any all copyrights, to FM. Industries, Inc. That the transfer was in conformity with 17 USC § 204.

52. That during FMI's physical move of its location in January of 2004, FMI has been unable to locate the original transfer agreement.

53. That pursuant to 17 USC § 204 Michael Friedman individually executed a document entitled NUNC PRO TUNC, CONFIRMATION ASSIGNMENT AND TRANSFER on February 19, 2008 effective January 31, 2001. See Exhibit **J**.

54. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2006 on February 1st, 2006, which is within 5 years of first publishing the program used by CCSI attorneys. The 2006 version of the program contains all revisions, additions, and enhancements of all preceding years. See Exhibit **K**.

55. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2005 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys. See Exhibit **L**.

56. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2004 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys. See Exhibit **M**.

57. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2003 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys. See Exhibit **N**.

58. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2002 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys. See Exhibit **O**.

59. FMI has fully complied with the copyright laws and has secured the exclusive rights and privileges in and to the copyrights of T.U.C.A.N.S. The Registrar of Copyrights has received FMI's registration for T.U.C.A.N.S. for the year of 2001 on April 4, 2007, which is within 5 years of first publishing the program used by CCSI attorneys. See Exhibit **P**.

60. The version of the T.U.C.A.N.S. program used by the attorneys to infringe FMI's copyright was produced and published in 2004 and known as version 5.6.

61. Defendant H&B has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for ten (10) individual transactions on ten (10) individual accounts[1]. That plaintiff possesses a report known as a "Collector Activity Report" evidencing these infringements, however due to this Honorable Courts ruling of June 17, 2008, said report cannot be attached as an exhibit.

62. That Defendant H&B has infringed on FMI's copyrights in T.U.C.A.N.S., and is in breach of the FMI software licensing agreement, by transferring data from the T.U.C.A.N.S. system to their other collection system commonly known as CLS. That the aforementioned Collector Activity Report as stated in paragraph 61 of this complaint displays notes that

---

[1] It should be noted for all defendants, that only if the user entered a transaction will the system record said transaction. However, if the user launched the program, reviewed the information on a particular account, but did not enter a transaction for the system to record, there would be no record of the illegal use under normal circumstances.

state "DTR PIF THIS ACCOUNT IN CLS". This note means (laymen's terms) that the debtor paid this account in full as noted in the CLS system.

63. That Defendant H&Z has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for ninety five (95) individual transactions on sixty seven (67) individual accounts.  That plaintiff possesses a report known as a "Collector Activity Report" evidencing these infringements, however due to this Honorable Court's ruling of June 17, 2008, said report cannot be attached as an exhibit.

64. That on information and belief, Defendant H&Z has infringed on FMI's copyrights in T.U.C.A.N.S. and is in breach of the FMI software licensing agreement, by printing out all of FMI's Information and retaining same for future reference on at least 1,841 individual accounts.

65. That Defendant R&A has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for thirty two (32) individual transactions on thirty one (31) individual accounts.  That plaintiff possesses a report known as a "Collector Activity Report" evidencing these infringements, however due to this Honorable Court's ruling of June 17, 2008, said report cannot be attached as an exhibit.

66. That Defendant Cortez has infringed FMI's copyrights in T.U.C.A.N.S. by continuing to illegally use the T.U.C.A.N.S. system after the termination date and has at the very least used the T.U.C.A.N.S. system for eighty-five (85) individual transactions. That plaintiff possesses a report known as a "Collector Activity Report" evidencing these infringements,

however due to this Honorable Court's ruling of June 17, 2008, said report cannot be attached as an exhibit.

67. That Defendant Cortez has infringed on FMI's copyrights in T.U.C.A.N.S. and is in breach of the FMI software licensing agreement, by transferring data from the T.U.C.A.N.S. system to his other collection system commonly known as CLS. That the aforementioned Collector Activity Report as stated in paragraph 66 of this complaint displays notes that state in part "USE CLS FILE" and "PAYING ACCOUNT". This note means (laymen's terms) that Defendant Cortez transferred the account information from T.U.C.A.N.S. to CLS and that the account was paying.

68. That based upon information and belief Defendant Gelfand has infringed FMI's copyrights and breached FMI's licensing agreement by redistributing the FMI software to Defendant R&B.

69. That based upon information and belief Defendant R&B has infringed FMI's copyrights in T.U.C.A.N.S. by using the T.U.C.A.N.S. system from at least December 3, 2001 up and through March 2007 without a license to do so.

70. That based upon information and belief Defendant R&B has infringed on FMI's copyrights in T.U.C.A.N.S. by printing out all of FMI's Information and retaining same for future reference as well as transferring data from the T.U.C.A.N.S. system to their other collection system.

71. That from at least December 3, 2001, through March 2007 R&B illegally utilized, possessed, controlled and maintained the TUCANS software and without permission, possessed, controlled, maintained and utilized the TUCANS system for its own personal gain from at least December 3, 2001, to March 2007.

72. By reason of the acts complained of herein, FMI has been and is being irreparably harmed and is entitled to an injunction restraining Defendants, from using, copying, or displaying the T.U.C.A.N.S. System or the copy written materials/information wrongfully taken from the T.U.C.A.N.S. system pursuant to 17 U.S.C. § 502.

73. FMI is further entitled to recover from Defendants, the damages it has sustained and will sustain as a result of Defendant's willful misconduct, as well as the gains, profits and advantages that Defendants, obtained as a result of its wrongful acts and its costs pursuant to 17 U.S.C.§ 501, *et. seq*.

74. That upon information and belief, the Member/Manager of Gelfand, Mr. Ross Gelfand, was and is also the CEO of R&B which had its principal place of business at the same address as that of Gelfand.

75. That although separate and distinct entities, these corporations transacted business within the same confines.  That upon information and belief, Gelfand, illegally and without permission, distributed the TUCANS software to R&B for its own beneficial gain.  That this unjustified and wrongful conduct by Gelfand, allowed for R&B to operate, control, transfer, disburse, and distribute the property of FMI, without any valid license or without any permission to operate.

## COUNT II
## COPYRIGHT INFRINGEMENT PURSUANT TO 17 U.S.C. §501, *et. seq.* and §106(3)
### (The Law Office of Ross Gelfand, LLC. and R & B Collections, Inc.)

76.  FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

77. That on or around July 2001, and upon information and belief, Gelfand was operated and controlled by its Member/Manager Ross Gelfand.  In addition, Ross Gelfand was and is the

CEO of R&B which was conducting business and operating within the confines of the Gelfand's offices.  Although separate and distinct entities, these companies both conduct business at the same registered address with separate employees, books, and records.

78. That the Law Office of Ross Gelfand LLC., entered into a licensing agreement with FMI in July 2001.  The Licensing Agreement held that the FMI System-related intellectual property rights are and shall at all times remain the sole and exclusive property of FMI pursuant to ¶2(c) of the licensing agreement.

79. The Licensing Agreement held that the software was provided to the attorneys at no cost during the pendency of the license for their exclusive use for CCSI's benefit only as the fees and royalties associated with the use of the system was paid to FMI from Citigroup, Inc., as part of the VSA.

80. The Licensing Agreement also prohibited the attorneys from accessing the system after the termination of the licensing agreement and further required that the attorneys certify within 30 days that they had deleted all of FMI's software pursuant to ¶4(c)(6) of the licensing agreement.

81. The Licensing Agreement also held that Customer may not: use, copy, modify or transfer the FMI Software, the FMI System or any FMI Information, or any copy, modification or merged portion in whole or in part, except as expressly provided for in this Agreement and further MAY NOT transfer possession of any copy, modification or merged portion of the FMI Software, the FMI System or any FMI Information to another party, unless it obtains FMI's prior written consent, which shall not be unreasonably withheld. See ¶¶3(b)(1) and 3(b)(4) of the licensing agreement.

82. That upon information and belief Gelfand distributed its licensed FMI software to R&B and allowed R&B access to the FMI Software. That this distribution was done without the knowledge, permission, or authorization of FMI.

83. That upon information and belief R&B utilized the unlicensed FMI Software for its direct benefit and for the benefit of the Gelfand.

84. That based upon information and belief, Gelfand improperly, willfully, and unlawfully in direct violation of the licensing agreement, distributed the copyrighted materials to R&B for an illegal purpose without obtaining prior authorization on behalf of FMI in violation of 17 USC §106(3).

85. That based upon information and belief Defendants R&B and Gelfand have received money at FMI's expense as a result of their misconduct, and that some or all the profits obtained through this illegal conduct is rightfully due to FMI pursuant 17 USC §504(a)(1) and 17 USC §504(b).

86. That on information and belief, the amount of gross money collected from December 3, 2001 which is the date that Cindy Johnson[2] first entered a transaction on the T.U.C.A.N.S. System, thus breaching and immediately terminating the License agreement between FMI and Gelfand, to July 10, 2005 was $3,187,816.92. That based upon a fee percentage of 19%, the net profit of the infringer was $605,685.21.

87. That in addition to the aforementioned amounts, there was a total of $47,533.26 collected in attorney fees and that the fee percentage was 100% bringing the total net profit of the infringer to $653,218.47

---

[2] On information and belief, Cindy Johnson only worked for R&B and never worked for Gelfand.

88. That on information and belief, the amount of gross money collected from July 10, 2005 to August 31, 2007 was $4,726,019.37. That based upon a fee percentage of 19%, the net profit of the infringer was $897,943.64.

89. That the combined net profit of the infringer is $1,551,162.11

90. The actual amount of money due from the Defendants R&B and Gelfand to FMI is unknown to FMI and cannot be ascertained without an accounting of the income and gross profits Defendants have obtained through their wrongful and unlawful conduct. FMI is entitled, therefore, to a full accounting.

**COUNT III**
**BREACH OF CONTRACT**
**(Hosto, Buchan, Prater, & Lawrence, PLLC, Harris & Zide, Regent & Associates and James D. Cortez)**

91. FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

92. That on or around the time the VSA was entered into in 2001, H&B, H&Z, R&A and Cortez entered into a Licensing Agreement with FMI for the benefit of CCSI. That pursuant to the licensing agreement each party was to receive certain account information through the T.U.C.A.N.S. network. That this information was placed by CCSI and forwarded to FMI to distribute to all outside counsel.

93. FMI, pursuant to the VSA, did forward certain account information through the T.U.C.A.N.S. system directly to H&B, H&Z, R&A, and Cortez. That H&B, H&Z, R&A and Cortez had access to this information through FMI which was the software provider. That H&B, H&Z, R&A, and Cortez paid no fee during the pendency of the license for this service as set forth in the licensing agreement as the fee and royalties were paid by Citigroup.

94. The license agreement entered into between H&B, H&Z, R&A, and Cortez, and FMI for the benefit of Citigroup specifically states that they have read the terms and conditions and agree to be bound by all those terms and conditions.

95. That on or around June 10, 2005, H&B, H&Z, R&A, and Cortez received written communication terminating the licensing agreement with FMI. Furthermore, this communication to H&B, H&Z, R&A, and Cortez made known that all information remained the property of FMI and that no duplication, publication, copying or transfer of information could take place.

96. That H&B, H&Z, R&A, and Cortez were also aware that the software should be deleted upon the termination of their licensing agreements with FMI.

97. That H&B, H&Z, R&A, and Cortez continued to use the T.U.C.A.N.S. system after the termination of the licensing agreement. That this unauthorized use of the system upon termination is a direct breach of the licensing agreement previously entered into.

98. That at no time was permission granted to use or obtain certain information that was the property of FMI upon termination.

99. That H&B, H&Z, R&A, and Cortez still continue to access the system and obtain information for their own benefit.

100. That H&B, H&Z, R&A, and Cortez have removed, copied, transferred, and obtained information from the T.U.C.A.N.S. system in direct violation and breach of the Licensing Agreement.

101. That based upon the aforementioned provisions of the Licensing Agreement, H&B, H&Z, R&A, and Cortez breached the Licensing Agreement by accessing the T.U.C.A.N.S. system after the termination date.

102.  Plaintiff has been damaged in the sum believed to exceed $100,000.00 by reason of the breach of the licensing agreement.

103.  That pursuant to Sec. 4(B)(5) of the licensing agreement, and based upon all defendants failure to comply with each and every provision set forth in the licensing agreement, FMI is entitled to reasonable attorneys' fees and costs for enforcement of its rights.

**COUNT IV**
**CONVERSION**
**(R & B Collections, Inc.)**

104.  FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

105.  That based upon information and belief instead of paying FMI for the use of its TUCANS system, R&B intentionally and willfully used the T.U.C.A.N.S. system without permission and took possession of FMI's property, including, but not limited to, FMI's confidential, proprietary, and copyrighted Software and Support Materials, all of which FMI stored on its T.U.C.A.N.S. system.

106.  This property is the sole and exclusive property of FMI. FMI has an exclusive right to possession and distribution of such property, which is valuable to FMI and vital to its continued business operations.

107.  FMI at no time consented, expressly or impliedly, to R&B copying, downloading, removal, retention, transferring, or distribution of such property.

108.  That based upon information and belief R&B has been in knowing and unauthorized possession and control of such property since at least December 2001, to at least March 2007.  During that time, R&B was obtaining unjust and substantial benefit from the

distribution of FMI's property to themselves or third parties without FMI's consent and without paying FMI for the value of such property.

109.  That based upon information and belief R&B's improper assumption and exercise of dominion and control over FMI's property and their likely distribution of the same has and will continue to interfere with and diminish FMI's rights in that property.

110.  Allowing R&B to retain the benefits received as a result of its wrongful acts would unjustly benefit R&B at FMI's expense.

111.  As a direct and proximate result of R&B's actions, FMI has lost, and will continue to lose, profits from potential purchasers of the TUCANS system and licensees of TUCANS software products, in an amount to be determined at trial.  R&B's wrongful conduct was a substantial factor in causing this harm.

112.  FMI is entitled to an award of the value of the property taken, with interest, and other damages to be proven at the time of trial.  In addition, or in the alternative, FMI is entitled to damages and repossession of the converted property.  In addition, or in the alternative, FMI is entitled to restitution of the Defendants R&B and Gelfand's ill-gotten gains.  FMI will seek its election of remedies at trial.

**COUNT V**
**UNJUST ENRICHMENT/RESTITUTION**
**(R & B Collections, Inc.)**

113. FMI incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

114. That based upon information and belief R&B unjustly received benefits at the expense of FMI through its wrongful conduct, including R&B's interference with FMI's business relationships and other unfair business practices, as well as its unauthorized use thereof, and

conversion of the Software and Support Materials, which took substantial time and money for FMI to develop.

115. That based upon information and belief R&B continues to unjustly retain these benefits at the expense of FMI.  It would be unjust for R&B to retain any value they obtained as a result of their wrongful conduct.

116. FMI is accordingly entitled to full restitution of all amounts in which R&B has been unjustly enriched at FMI's expense.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, FMI, prays that this Court:

1. Preliminarily and permanently enjoin Defendants, their subsidiaries and affiliates and their officers, directors, agents and representatives, attorneys and all persons acting or claiming to act on their behalf or under their direction and authority from (i) copying, selling, distributing, displaying or otherwise using for any purpose the T.U.C.A.N.S. system and/or the wrongfully obtained copy written materials/information without FMI's express consent or in any other way further infringing on FMI's copyrights in T.U.C.A.N.S., (ii) engaging in any action that allows a third party to copy, sell, distribute, display or otherwise use for any purpose the T.U.C.A.N.S. system without FMI's express consent.

2. Order the impounding of all unauthorized copies of the T.U.C.A.N.S. system from each defendant;

3. Order that any and all copy written materials/information be deleted from any system that said materials/information has/had been transferred to.

4. Award FMI its actual damages.

5. An award for attorneys' fees and costs to FMI for enforcement of its rights due to the noncompliance of each and every provision set forth in the licensing agreement.

6. Order an accounting for the amounts recovered on behalf of Citigroup and CCSI from the unauthorized use of the T.U.C.A.N.S. systems, which is the Defendants's profit as a direct and proximate result of Defendants's copyright infringement and order such profits to be paid to FMI pursuant to 17 U.S.C. § 504(b);

7. Alternatively, FMI is entitled to the aforementioned amount and its actual damages in an amount equal to its normal retail price of $3,750 to $5,000 per individual licensed user.

8. Declare Defendants Hosto, Buchan, Prater & Lawrence, PLLC, Harris & Zide, Regent & Associates and James D. Cortez Attorney at Law are in breach of the FMI Software Licensing Agreement and have infringed on FMI's copyrights;

9. Award FMI from Hosto, Buchan, Prater & Lawrence, PLLC, the maximum damages, pursuant to 17 U.S.C. § 504(b), in the amount in excess of $75,000.00;

10. Award FMI from Hosto, Buchan, Prater & Lawrence, PLLC, the actual damages based upon number of unlicensed users, pursuant to 17 U.S.C. § 504(b), in the amount of not less than $386,250.00 representing 103 unlicensed users at $3,750.00 per user or $515,000.00 representing 103 unlicensed users at $5,000.00 per unlicensed user;

11. Award FMI from Harris & Zide the maximum damages, pursuant to 17 U.S.C. § 504(b), in the amount in excess of $75,000.00;

12. Award FMI from Harris & Zide the actual damages based upon number of unlicensed users, pursuant to 17 U.S.C. § 504(b), in the amount of not less than $847,500.00 representing 226 unlicensed users at $3,750.00 per user or $1,130,000.00 representing 226 unlicensed users at $5,000.00 per unlicensed user;

13. Award FMI from Regent & Associates the maximum damages, pursuant to 17 U.S.C. § 504(b), in the amount in excess of $75,000.00;

14. Award FMI from Regent & Associates the actual damages based upon number of unlicensed users, pursuant to 17 U.S.C. § 504(b), in the amount of not less than $562,500.00 representing 150 unlicensed users at $3,750.00 per user or $750,000.00 representing 150 unlicensed users at $5,000.00 per unlicensed user;

15. Award FMI from James D. Cortez Attorney at Law the maximum damages, pursuant to 17 U.S.C. § 504(b), in the amount in excess of $75,000.00;

16. Award FMI from James D. Cortez Attorney at Law the actual damages based upon number of unlicensed users, pursuant to 17 U.S.C. § 504(b), in the amount of not less than $48,750.00 representing 13 unlicensed users at $3,750.00 per user or $65,000.00 representing 13 unlicensed users at $5,000.00 per unlicensed user;

17. Award FMI from Gelfand an amount to be determined at trial for unlawfully distributing T.U.C.A.N.S. to R & B Collections, Inc., FMI's copy written software;

18. Award FMI from R & B Collections, Inc., an amount in excess of $75,000.00 and/or to be determined by accounting and/or at trial the amount collected by R&B on behalf of Citibank and Citigroup entities;

19. Award FMI punitive damages for the willful and wanton nature of Defendants's acts;

20. Award FMI interest, costs and its attorneys' fees pursuant to 17 U.S.C. § 505; and

21. Alternatively award FMI attorneys fees pursuant to section 4(B)(6)of the License Agreement

22. Award such other further relief as this Court deems just and proper.

Dated: July 8, 2008                          Respectfully submitted,
                                             **FM INDUSTRIES INC**


By:      s/Wayne Rhine
                              Wayne Rhine


**WAYNE RHINE**
**Attorney for Plaintiff**
**ARDC #2323990**
**500 W Madison St. #2910**
**Chicago, IL. 60661**
**Phone:  (312)474-4532**